300

Commonwealth *v.* Collins, Appellant.

Argued September 27, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Graham Sale, Jr.,* Assistant Public Defender, with him *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*Carol Mary Los,* Assistant District Attorney, with her *Robert L. Campbell,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, April 20, 1972:

This is an appeal from the judgment of sentence of life imprisonment imposed on Marvin Collins following his conviction by a jury of murder in the first degree. We conclude a new trial is necessary because the trial court excluded certain testimony sought to be introduced by Collins at trial which should have been admitted to aid the jury in resolving one of the principal issues in the case.

According to the Commonwealth, Collins shot and killed Frank Butera, while attempting to commit a robbery in a small watch repair shop on Bedford Avenue in Pittsburgh owned and operated by the victim's brother, John Butera. Testifying on his own behalf, Collins denied any intent or attempt to rob. He said, that he conducted fencing transactions with John Butera on several occasions, and on the day of the killing he was in the Butera shop to demand payment for or the return of a quantity of stolen jewelry which he had previously given to John Butera to be fenced; that an argument developed and he was stabbed in the back by Frank Butera with a knife; that in an attempt to defend himself from being stabbed again he pulled a gun and Frank Butera was accidentally shot in a strug-

gle for possession of the knife.

The Commonwealth's case, in most part, depended on the testimony of John Butera who was an eyewitness. On cross-examination, the defense attempted to inquire if he ever engaged in fencing operations with others, particularly a Norman Turner and a John Staubitz. This line of inquiry was immediately shut off by the trial judge as having no relevance to the issue at trial. As part of its case in chief, the defense sought permission from the court to call Turner and Staubitz as witnesses, who were then incarcerated in state correctional institutions. The trial judge refused the request ruling the testimony would be irrelevant.

While what Turner and Staubitz would testify to specifically is not as clear in the record as proper trial technique requires, a reading of the record is persuasive that the adamant and spontaneous conclusion of the trial judge that the testimony was "highly improper" without an attempt to ascertain the details contributed to this deficiency. However, it does appear that Turner would testify he sold two stolen television sets to John Butera during the summer of 1969 (the killing occurred on March 17, 1969), and Staubitz would testify he fenced stolen articles with Butera on two occasions prior to the day of the killing.

While it is true that the attention of the jury should not be diverted from the issue on trial by collateral matters (*Commonwealth v. Petrillo,* 341 Pa. 209, 19 A. 2d 288 (1941), and 3A Wigmore, Evidence §1003 (Chadbourn rev. 1970)) one of the most disputed issues in the instant case was whether or not the killing occurred in the attempt to commit a robbery or whether it took place while Collins was in the shop concerning a fencing transaction and shot Frank Butera defending himself from a knife attack by the victim. Obviously, if the latter were true, the killing would not

be a felony-murder.[1]  Further, the burden of proving the killing was committed in self-defense was upon Collins and if this defense were to prevail it was vital for Collins to establish that John Butera was a fence and that Collins was in the shop on the day in question in connection with a fencing operation and not to rob.  The rejected testimony would tend to corroborate Collins that John Butera was a fence and thus make Collins' explanation as to why he was in the Butera shop more credible in the minds of the jurors.  Moreover, if proper grounds were laid, the rejected testimony might well tend to cast doubt on the veracity of John Butera and the quality of his testimony as to circumstances under which the killing occurred.

While the testimony of Turner in itself might be of little significance, this testimony, together with that of Staubitz, might well cast doubt on the contention of the Commonwealth that the killing was a felony-murder.

It is also noteworthy that, while John Butera testified he did not see his brother, Frank, with a knife and that the victim was shot without assaulting or even coming near Collins, the police did find a pearl-handled knife on the floor of the shop when they arrived on the scene shortly after the occurrence.  Also, witnesses called by the Commonwealth who saw Collins after the occurrence testified he was then suffering from a bleeding wound of the back.  Additionally, Collins' testimony that he was treated on the night of the occurrence in a Pittsburgh hospital for knife wounds was not contradicted at trial.  In light of all the circumstances, it is our view that Collins' right to a fair

---

[1] The jury was instructed on common law murder, as well as felony-murder. Since the verdict was a general one, it is impossible to determine if the conviction was based on a finding of felony-murder.

304

trial mandated that the jury have the benefit of at least hearing the rejected testimony.[2]

Since the case must be retried, one other assignment of error indicates discussion. The trial judge denied a specific request to instruct the jury that if Collins only intended to recover goods which he believed belonged to him, this would not constitute a robbery, since the required felonious intent would be absent. Under the proof in this case, such an instruction was proper and would help clarify the issue for the jury. Cf. *Commonwealth v. Simpson*, 436 Pa. 459, 260 A. 2d 751 (1970).

Judgment reversed and a new trial is ordered.

Former Mr. Chief Justice BELL and former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

[2] The above view is not meant to convey any conclusion on our part as to the truthfulness of Collins' testimony or that of the witnesses he requested to call at trial.