Commonwealth *v.* Bailey, Appellant.

202

Argued March 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Anthony V. DeCello,* with him *DeCello, Bua & Manifesto,* for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, January 19, 1973:

On September 19, 1969, at approximately 10 a.m., Mrs. Dorothy Robinson was shot and killed in the bedroom of her home at 5419 Columbo Street, Pittsburgh. James Bailey, the appellant, was indicted for murder and voluntary manslaughter. After a jury trial, appellant was found guilty of second degree murder. Post-

trial motions were denied, and appellant was sentenced to imprisonment for a period of ten to twenty years. This appeal followed.

Appellant asserts here, as he did below, error (1) in the refusal to allow both of appellant's lawyers to cross-examine the chief Commonwealth witness, (2) in the rejection of certain proferred evidence as irrelevant, and (3) in that part of the charge to the jury wherein it was stated that the evidence would not support a verdict of voluntary manslaughter. We conclude that the second and third points are well taken and that a new trial must be had. Our discussion will be in inverse order to the above listing.

The Commonwealth's evidence was largely supplied by Cleveland Robinson, a 72-year-old retired mill worker and the husband of the victim. His story was substantially as follows: Appellant, accompanied by one William Trautman, went to the Robinson home on the morning involved and gained entrance by telling Robinson that they were from the Internal Revenue Service. Once inside, they pulled guns, demanded money, and began to beat Robinson. Following the beating, they followed Robinson to his bedroom upstairs, where his semi-invalid wife was sitting on the bed. At this point Robinson reached under the mattress of the bed, ostensibly for money, but instead grabbed a .38 calibre revolver and shot the appellant in the shoulder. The appellant then jumped Robinson and a scuffle ensued during which a number of shots were fired. One of these bullets struck Mrs. Robinson in the chest, inflicting the wound from which she died. After wresting Robinson's revolver away from him, appellant followed Trautman from the room. Mr. Robinson, although seriously wounded, managed to get outside and summon the help of a neighbor, who called the police.

Reacting quickly to the alarm, the police spotted appellant a few blocks away from the Robinson resi-

dence and caught him after a chase. Two weapons, a .38 calibre revolver and a 7.62 millimeter Jeco revolver, were found on the person of appellant. A bullet from the Jeco revolver was found inside Mrs. Robinson's nightgown, where it had apparently remained after having exited from her body.

The appellant testified on his own behalf, giving the following account: Bailey had borrowed sums totalling $800 from Mr. Robinson and had made an appointment with Mr. Robinson for the morning of September 19, 1969, the date of the killing, to discuss an extension of time for repayment of the loan. Trautman drove him to the Robinson home, where both were freely admitted by Mr. Robinson. Robinson demanded repayment of the loan, and threatened to get the money from appellant's wife and children if appellant did not pay. Becoming belligerent, Robinson pulled a gun from his pocket and clubbed the appellant on the head, but appellant subdued him and managed to take the gun away. Robinson then fled up the stairs, threatening to kill the appellant. The appellant followed and kicked in the closed bedroom door. At this point, Robinson shot Bailey in the shoulder and a second scuffle ensued. Appellant could recall nothing of what then happened until after he was out of the house and walking down the street. Trautman's testimony generally corroborated the appellant's.

(1) We consider first the argument that the charge of the trial court was in error and prejudicial inasmuch as it expressed the opinion of the judge that no basis existed for a finding of voluntary manslaughter.[1] Our

---

[1] The relevant portion of the charge is as follows:

"We say to you, members of the jury—and this is merely the opinion of the Court—we say to you at this time we are submitting the count also of manslaughter. You are not bound by the opinion of the Court. It is your judgment; it is the way you weigh the facts. *The Court does not see, on the basis of the testimony pre-*

review of the record satisfies us that there was evidence which, if believed by the jury, could support such a verdict. We therefore conclude that the learned trial court erred in making the statement referred to.[2]

The appellant testified that Robinson struck him three or four times in the head with a gun and that those blows resulted in a large gash on appellant's head. This was corroborated both by the testimony of Trautman and the medical report relative to appellant's injuries. Bailey also testified as to his rage stemming from Robinson's assault upon him and threats to kill

---

*sented in this case, the Court does not see any basis for a finding of voluntary manslaughter;* however, the jury does have the power to return such a verdict if they see fit. The reason for the Court's position is that the defendant denies that he intentionally took the life or that there was any sufficient provocation or passion which could justify it or that there was any judgment clouded to that extent, and on the basis of the evidence that is what our opinion is based on; however, it is within the province of this jury to decide."

[2] In light of this disposition, we need not decide whether the comment of the court would be interdicted under recent decisions of this court. See *Commonwealth v. Motley*, 448 Pa. 110, 289 A. 2d 724 (1972), *Commonwealth v. Archambault*, 448 Pa. 90, 290 A. 2d 72 (1972) and the opinion of Mr. Justice O'BRIEN in *Commonwealth v. Miller*, 448 Pa. 114, 290 A. 2d 62 (1972).

We note that the challenged instruction advised the jury that it "does have the power to return such a verdict [manslaughter] if they see fit." For this reason the charge does not encounter the criticism that has prompted recent dissenting opinions by Justice ROBERTS and the writer. See *Commonwealth v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971) (dissenting opinions of Mr. Justice ROBERTS and of the writer) ; *Commonwealth v. Banks*, 447 Pa. 356, 364, 285 A. 2d 506 (1972) (dissenting opinion of the writer, joined by Mr. Justice ROBERTS) ; *Commonwealth v. Davis*, 449 Pa. 468, 297 A. 2d 817 (1972) (opinions of Mr. Justice ROBERTS and of the writer in opposition to order of affirmance) ; *Commonwealth v. Kenney*, 449 Pa. 562, 297 A. 2d 794 (1972) (dissenting opinion of Mr. Justice ROBERTS, joined by the writer) ; and *Commonwealth v. Jones*, 450 Pa. 442, 299 A. 2d 288 (1973) (dissenting opinion of the writer, joined by Mr. Justice ROBERTS).

him. The state of mind so provoked could surely be the blind passion essential for voluntary manslaughter. The trial court was of course correct, in giving its definition of voluntary manslaughter, that it is an intentional killing, see *Commonwealth v. Edwards,* 448 Pa. 79, 292 A. 2d 361 (1972), *Commonwealth v. Zapata,* 447 Pa. 322, 290 A. 2d 114 (1972), and in noting that in this case the defendant denied intentionally taking life. The jury was not bound to accept this denial, however; its task is to make up its own mind from the evidence before it what the true situation was at the time of the homicide. Here it could well have determined that appellant did intend to shoot Robinson when he chased Robinson upstairs, but that by mischance during the ensuing struggle shot Mrs. Robinson instead. This would still be manslaughter. "[T]he degree of guilt is not varied because mortal violence intended for one person accidentally kills another: (citations omitted)." *Commonwealth v. Lyons,* 283 Pa. 327, 329, 129 A. 86 (1925); accord, *Commonwealth ex rel. McCant v. Rundle,* 418 Pa. 394, 211 A. 2d 460 (1965).

(2) We turn now to appellant's second argument. Appellant sought to call two witnesses who would have testified that Robinson was a money-lender from whom they themselves had borrowed. The trial judge excluded this evidence as going into collateral matters and so being irrelevant. The testimony, however, would have tended to support appellant's version as to his own dealings with Robinson and his reason for going to his house. By the same token, it would have cast doubt upon Robinson's denial of prior acquaintance with Bailey and his account of the Internal Revenue ruse. The facts here bear a close resemblance to those in *Commonwealth v. Collins,* 447 Pa. 300, 290 A. 2d 121 (1972). There the defendant's version of his purpose for being in a watch repair shop where he shot the

proprietor was that he had entered the shop in order to dispose of some stolen goods, and not to rob the store. The court rejected the testimony of two witnesses who would testify that the proprietor was known to them to be a fence with whom they had placed various articles. We held that this exclusion was erroneous and necessitated a new trial. We think that the rationale of *Collins* compels a new trial in the case at bar.

(3) Appellant's final contention is that the court abused its discretion in not permitting his co-counsel to renew cross-examination of the witness Robinson after he had been fully cross-examined by his colleague. We disagree. In this respect, as with other aspects of cross-examination such as scope, manner, and length, the sound discretion of the trial judge must prevail. We have examined the record and are satisfied that the judgment of the court in not permitting more than one lawyer to cross-examine the same witness was sound and proper and in no way abridged the right of the defendant to full and effective cross-examination of a state's witness.

The judgment of sentence is reversed, and a new trial is ordered.