385 A.2d 334

**COMMONWEALTH of Pennsylvania**

v.

**Harry MIMMS, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 29, 1976.

Decided March 23, 1978.

Stephen Robert LaCheen, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty., Robert B. Lawler, Chief Appeals Div., Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, Harry Mimms was convicted in the trial court of carrying a concealed deadly weapon[1] and unlawfully

[1] Act of June 24, 1939, P.L. 872, § 416, as amended 18 P.S. § 4416. That section has subsequently been replaced by §§ 907 and 908 of the Crimes Code. See the Act of December 6, 1972, P.L. 1482, No. 334, §§ 907, 908, 18 Pa.S.C.A. §§ 907, 908.

carrying a firearm without a license.[2] The Superior Court affirmed the conviction, *Commonwealth v. Mimms*, 232 Pa. Super. 486, 335 A.2d 516 (1975), and we granted allocatur.

Our original decision was to reverse the Superior Court and direct a new trial on the ground that appellant's revolver had been seized by the police in a manner which violated the Fourth Amendment to the Constitution of the United States. *Commonwealth v. Mimms*, 471 Pa. 546, 370 A.2d 1157 (1977). The Supreme Court of the United States granted the Commonwealth's petition for certiorari, reversed our order and remanded the case to this Court for further proceedings.[3] Having reexamined the record and the assignments of error not heretofore addressed,[4] we determine that Mimms is entitled to a new trial on a ground other than the alleged search and seizure violation which formed the basis of our first decision.[5]

**2.** Act of June 24, 1939, P.L. 872, § 628, as amended, 18 P.S. § 4628. That section has likewise been replaced by the Crimes Code, n. 1, *supra*. *See* 18 Pa.C.S.A. §§ 6101 through 6119.

**3.** *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1978). The opinion of the Court was unsigned. Dissenting opinions were filed by Mr. Justice Marshall and Mr. Justice Stevens (the latter opinion being joined by Mr. Justice Brennan and Mr. Justice Marshall).

**4.** See *Commonwealth v. Mimms*, 471 Pa. 546, 548–49, n. 2, 370 A.2d 1157–58, n. 2 (1977).

The issue which we now hold compels reversal was considered by Mr. Justice Nix at the time of our original decision in this case and was the ground on which he would have ordered a new trial. *Commonwealth v. Mimms*, 471 Pa. at 553, 370 A.2d at 1161 (1977) (concurring opinion of Nix, J., joined by O'Brien, J.).

**5.** The issue of the propriety of the search which produced the weapon from Mimms' person after a police stop for a traffic violation was framed and argued to this Court on the basis of the Fourth Amendment of the Federal Constitution. This amendment was made applicable to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and formed the basis of our earlier decision. It was not argued to us that such police activity as here occurred in relation to a routine traffic stop violated Art. I, Section VIII of the Pennsylvania Constitution and we do not address that question. To do so would be to violate the well-established and jurisprudentially sound rule that a court should not *sua sponte* raise an issue not properly placed before it by the litigants. *See Reed v. Sloan*, 475 Pa.

During the trial of appellant both Mimms and one Clayton Morrison, a passenger in Mimms' automobile at the time of the arrest of Mimms, testified that it was Morrison who had brought the illegally possessed firearm into the car.[6] Morrison also testified that at the time of the seizure the gun was not located on appellant's person but was concealed under the seat of the automobile. On cross-examination, the assistant district attorney asked Morrison the following questions and received the following answers:

"Q. Tell me, are you a good friend of Harry Mimms?

A. I am an acquaintance of him, I know him.

Q. You know him very well would you say?

A. Yes, sir.

Q. *Are you both Muslims?*

A. *Sir?*

MR. ABRAMSEN: Objection, sir, I move for withdrawal of a juror.

THE COURT: Overruled.

BY MR. KLEIN:

Q. *Are you both Muslims?*

A. *Yes, sir.*

Q. *In other words, when you say 'Muslims,' followers of the Islam faith is that right?*

A. *Yes.*

Q. Do you see Mr. Mimms often?

A. I see him frequently.

Q. How often?

A. Not that often I see him.

Q. How often?

A. Once or twice out of the day.

Q. Once or twice a day?

A. Yes, sir.

570, n. 4, 381 A.2d 421, n. 4 (1977); *Commonwealth v. Branham,* 467 Pa. 605, 359 A.2d 766 (1976); *Weigand v. Weigand,* 461 Pa. 482, 337 A.2d 256 (1975).

**6.** Prior to the trial in the case now before us, Morrison had pleaded guilty to the same charges for which Mimms was convicted.

Q. Would you consider yourself a good friend of Mr. Mimms?

A. We are acquaintances.

Q. Quite good friends?

A. Yes, sir, I know him.

Q. Do you know his family?

A. No, I don't.

MR. KLEIN: No further questions." (Emphasis added.)

■ Questions relating to one's religious beliefs are specifically forbidden by statute in this state. The Act of April 23, 1909, P.L. 140, § 3, 28 P.S. § 313 provides:

"No witness shall be questioned in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility."

Although affiliation rather than belief was the thrust of the cross-examination above quoted, the one blends into the other. While circumstances can be imagined in which religious affiliation would be of relevance, it is clear from the present record that the religious affiliations of appellant and Morrison were irrelevant to any issue at trial and that such inquiry had not in any way been evoked by the direct examination of Morrison. Compare *McKim v. Philadelphia Transit Company*, 364 Pa. 237, 72 A.2d 122 (1950). The Commonwealth contends that the questioning was merely intended to show the friendly relationship between Morrison and Mimms and was not intended to capitalize upon the notoriety of the Muslim faith which obtains locally.[7] The statute is, however, expressly worded to prevent the use of religious profession for the purpose of affecting credibility. If, as the Commonwealth argues, the questioning sought only to establish the friendship of the two men, there were

7. We cannot ignore the fact that Mimms and Morrison were black nor can we ignore the fact that certain adherents of the Muslim faith known as "Black Muslims" have been the subject of widespread unfavorable publicity, primarily because of involvement of some of its followers in criminal activity. See, e. g., *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977).

numerous other ways, equally effective, to establish such a relationship without touching upon religion.

 Appellant's defense depended altogether on the credibility of the assertions by him and Morrison concerning the circumstances under which the search took place. Accordingly, the impeachment tactics that were employed by the prosecution in violation of an express act of legislature cannot, in the context of the present case, be considered harmless.[8]

Judgment of sentence reversed and a new trial ordered.

ROBERTS, J., filed a concurring opinion in which EAGEN, C. J., and MANDERINO, J., join.

ROBERTS, Justice, concurring.

I agree with the majority that the Commonwealth committed reversible error, requiring grant of a new trial, when it questioned Clayton Morrison concerning his religious affiliations. I believe, however, that the preferable ground for resolution of this case is the search and seizure issue which prompted our original reversal. To the opinion we filed originally, I would add only, "Our discussion of the Fourth Amendment is equally applicable to the state constitutional provision." *Commonwealth v. Platou,* 455 Pa. 258, 260 n. 2, 312 A.2d 29, 31 n. 2 (1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974) (certiorari denied, "it appearing that judgment below rests upon an adequate state ground").

The search and seizure issue is preferable to that now addressed by the majority for several reasons. Most impor-

---

**8.** We do not intend to establish a *per se* rule of reversible error in any case where a reference to religious beliefs occurs. Whether evidence, admitted in violation of a statute, actually deprives a defendant of his right to a fair trial must be viewed in light of the attendant circumstances. See *Commonwealth v. Galloway,* 476 Pa. 332, 382 A.2d 1196 (1978); *Commonwealth v. Allen,* 239 Pa.Super. 83, 361 A.2d 393 (1976).

In the present case, where the entire defense is predicated on the credibility of appellant and his witness, and where reference is made to a controversial religious organization in a manner which reflects not only on the witness but equally on the defendant, we cannot conclude that it is harmless.

tant, we deemed the result of *Mimms* a sound one when rendered. It is equally sound today. We held, quoting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that a contrary result "would invite intrusion upon constitutionally guaranteed rights based on nothing more substantial than inarticulable hunches." *Commonwealth v. Mimms*, 471 Pa. 546, 553, 370 A.2d 1157, 1160 (1977), rev'd. and remanded sub nom. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1978). This rule is for Pennsylvania no less sound today, even though the United States Supreme Court has declined to impose it upon all the states and the Federal government. If we have found a constitutional principle sound and salutary, we should not hesitate to endorse it as a matter of state law. See *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975) (forbidding impeachment by means of unconstitutionally obtained statement); *People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975). This view is particularly true where the principle advances important individual freedoms generally favored by both the state and federal constitutions. See generally, Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv.L.Rev. 489 (1977). The wisdom of both our holding in *Mimms* and the approach I suggest here was recently recognized by the Supreme Court of Delaware, which adopted on both state and federal constitutional grounds a rule similar to that we announced in *Mimms*. *State v. Prouse*, Del., 382 A.2d 1359 (1978) (holding unconstitutional random auto stops where police had no reasonable suspicion of wrongdoing; following *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973)).

Disposition on state grounds also preserves a body of state law independent of decisions of the United States Supreme Court. See *Commonwealth v. Platou*, supra (certiorari denied because judgment rested on independent state ground). Where so many of our decisions concerning individual rights reflect considerations of local conditions, a decision founded on state grounds is appropriate.

The majority avoids addressing the Pennsylvania Constitution by resort to the principle that a reviewing court should not consider issues "not properly placed before it by the litigants." 477 Pa. at 556, n. 5, 385 A.2d at 335 n. 5. In my view, this principle does not apply here. Both parties framed the issue in *Mimms* as one of search and seizure. We have often passed upon this issue under both the Fourth Amendment of the Constitution of the United States and the Pennsylvania Constitution. See *Commonwealth v. Knowles*, 459 Pa. 70, 73 n. 3, 327 A.2d 19, 20 n. 3 (1974); *Commonwealth v. Eazer*, 455 Pa. 320, 322 n. 2, 312 A.2d 398, 399 n. 2 (1973); *Commonwealth v. Platou*, supra. The language of the Fourth Amendment and our relevant state provision differ in no significant respects,* the issue was well briefed, the Court carefully considered the facts and arguments presented, and it is highly unlikely that the parties could, if granted an opportunity, direct toward the state Constitution new arguments concerning search and seizure of which we are not now aware.

When the state constitution is so strongly implicated in a federal constitutional challenge, sound judicial practice requires that we regard the state constitutional question as properly presented. A contrary view would force us to decide issues upon federal constitutional grounds whenever the parties do not specifically address other grounds adequate to dispose of the appeal. Control of our scope of review should reside in this Court. *Wyman v. James*, 400

---

* The Fourth Amendment to the Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Pennsylvania Constitution provides:

> "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

Pa.Const. art. I, § 8.

U.S. 309, 345 & n. 7, 91 S.Ct. 381, 401 & n. 7, 27 L.Ed.2d 408 (1971) (dissenting opinion of Marshall, J., joined by Brennan, J.); see *Ashwander v. TVA*, 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Thus, that the parties focused on the federal constitution does not necessarily extinguish our inherent power to measure the propriety of a Pennsylvania search and seizure according to the Pennsylvania Constitution.

I therefore believe the question whether the search and seizure violated the state constitution is properly before us. In my view, this Court should simply add to our original opinion a statement that our holding is based equally on the Pennsylvania Constitution. See *Commonwealth v. Platou*, supra.

EAGEN, C. J., and MANDERINO, J., join in this concurring opinion.