413 A.2d 655

COMMONWEALTH of Pennsylvania, Appellee,

v.

James Richard GREENWOOD, Appellant.

No. 79.

Supreme Court of Pennsylvania.

April 25, 1980.

Argued March 11, 1980.

Decided April 25, 1980.

George B. Stegenga, Washington, for appellant.

Paul M. Petro, Asst. Dist. Atty., Washington, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

This is an appeal from the judgment of sentence (three years imprisonment) imposed on James Richard Greenwood following his conviction by a jury of involuntary manslaughter.[1] For the reasons that follow, we reverse and award a new trial.

The factual background of the killing which gave rise to the prosecution may be briefly stated thusly:

1. The judgment of sentence was affirmed by the Superior Court. Judge Spaeth filed a dissenting opinion. We granted Greenwood's petition for special allowance to appeal.

   We note that, following argument of post-verdict motions in the trial court, the President Judge of that court filed a minority opinion urging a new trial.

After gaining no response to repeated dialings of the phone number and knocks on the door of appellant Greenwood's farmhouse-residence, two young men entered the house through an unlocked basement door with the intent of stealing drugs. Shortly thereafter, Greenwood confronted the intruders armed with a loaded, .22 caliber rifle. As the intruders fled from the premises, Greenwood followed and pursued them for a distance of over 200 feet firing several shots. As one of the young men ran through a field located more than 400 feet from the Greenwood house, he was hit and fatally injured by a shot fired by Greenwood.

Greenwood testified on his own behalf at the trial, saying he fired the rifle to frighten the intruders only and not with any intent of hitting either of them. During cross-examination, the District Attorney was permitted to make the following inquiries over objection:

"Q. Is it correct that you are listed as Reverend James Greenwood in the telephone directory?

Mr. Stegenga: If the Court please, I am going to impose an objection to this type of testimony as being prejudicial.

The Court: Overruled.

Q. The University of Pittsburgh has no theological school, does it?

A. That's right.

Q. California State College has no theological school, does it?

A. That's correct.

Q. You have no theological degrees?

A. That's correct.

Q. Why do you list yourself as a Reverend in the directory?

A. Because I am a Reverend.

Q. Where did you get your ministry degree?

A. Universal Life Church.

Q. Why wasn't that mentioned among your other credits?

A. I don't know.

Q. Where is the Universal Life Church?

A. The office is in Modesto, California. But there are many branches in the country.

Q. Did you acquire that degree when you were in San Francisco?

A. That's correct.

Q. Does that Church believe in the Ten Commandments, Mr. Greenwood?

A. The only doctrine the Universal Life Church is, you believe in what's right.

Q. Does it believe that thou shalt not kill?

A. The only doctrine of the Universal Life Church is believing what's right. I believe it's right not to kill."

Cross-examination of the same nature ensued of witnesses who testified to Greenwood's reputation.[2]

---

**2.** For example, Greenwood's father-in-law was questioned in part as follows over objection:
 "Q. Do you know that your son-in-law is listed in the telephone directory as Reverend James Greenwood?
 A. Yes, sir, I do.
 Q. Have you gone to any of his church meetings?
 A. No, I haven't."
Another witness was subject to the following cross-examination over objection:
 "Q. Where does your wife live?
 A. She lives in Carnegie, Pa.
 Q. Are you separated?
 A. I've been separated for four years, yes.
 Q. Do you go to church with Reverend Greenwood?
 A. No. I don't go to church with anybody.
 Q. Do you go to church?
 A. No, I don't believe in church."
Another witness was cross-examined in part as follows over objection:
 "Q. Do you go to the same church as Reverend Greenwood?
 A. No, sir.
 Q. What church do you go to?
 A. None.
 Q. *Do you and your husband share Mr. Greenwood's disbelief in the Ten Commandments?*" (emphasis added) (This question also assumed a fact not in evidence.)

622

The cross-examination was irrelevant to the issue on trial [3] and tended to divert the minds of the jury and prevent an objective resolution of the question for decision. In plain language, it created an aroma not conducive to a fair trial. Moreover, it was blatantly violative of the Act of April 23, 1909, P.L. 140, 28 P.S. § 313 which provides:

> "No witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility."

See *Commonwealth v. Mimms*, 477 Pa. 553, 385 A.2d 334 (1978).

Judgment reversed, and new trial ordered.

3. Pointing out that during Greenwood's direct examination he detailed many alleged academic achievements, the district attorney urges this opened the door to the type of cross-examination he pursued. We are not so persuaded. For example, whether Greenwood or his witnesses believed in the Ten Commandments was totally irrelevant and served no useful purpose.