505 A.2d 337

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Frank G. COSTAL, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1985.

Filed Feb. 19, 1986.

Harry O. Falls, New Castle, for appellant.

Annette M. Hutchison, Assistant District Attorney, New Castle, for Com., appellee.

Before OLSZEWSKI, POPOVICH and MONTGOMERY, JJ.

OLSZEWSKI, Judge:

This is a challenge to the judgment of sentence upon appellant's conviction of two counts of first degree murder. Appellant alleges that the admission of photographs of the victims and irrelevant and prejudicial evidence concerning satanism deprived him of an objective and unbiased jury. Because we find that the evidence was properly admitted, we reject these arguments and affirm the judgment of the court below.

Appellant was convicted of the murder of Kathy Kadunce and her four year old daughter, Dawn, on the morning of July 11, 1978. The murders took place in the victims' home and were discovered several hours later. At trial, appellee proceeded under the theory that the killings were performed in a ritualistic manner, and were motivated by Kathy Kadunce's interference in the homosexual relationship between her husband and appellant, and her interference in appellant's drug dealing.

Photographs admitted at trial revealed that the victims were stabbed 17 times in a similar fashion and in the same

pattern. Ceremonial robes, books, posters, plastic skulls and bats, and marriage licenses drawn up by appellant and signed by him as a "high priest" of Satan were seized from appellant's apartment pursuant to a warrant. Expert testimony was offered providing information on satanism and linking these items to satanism. Additional evidence linked appellant with satanism, including testimony that he told a witness of his attendance at human sacrifices and that 17 was the number of stab wounds required at these ritualistic killings.

An expert witness testified to the prominant role of mind control in satanism and the practice of causing others to commit crimes and perform homosexual acts to further such control. Appellee offered testimony regarding appellant's control of the people around him. Appellant apparently surrounded himself with younger, naive people who committed crimes, such as shoplifting, for him and engaged in homosexual relations with him.

Evidence was introduced regarding the intimate relationship between appellant and Kathy Kadunce's husband, and revealing appellant's use of and dealing in drugs. Specifically, evidence was offered to show that a drug sale was to take place shortly before the killings. The sale was thwarted when the victim discovered the drugs, which appellant had given to her husband, and flushed them down the toilet.

The appellant lists five issues on appeal. The first is whether appellant's trial was held in violation of Pa.R. Crim.P., Rule 1100—the 180 day rule. The remaining four attack the propriety of evidence admitted at trial. Our discussion is limited to the objections to evidence on satanism and the admission of photographs of the victims. A careful review of the record reveals that the remaining issues are without merit and were adequately disposed of by the court below. No further discussion of them is necessary.

Appellant challenges the admissibility of evidence concerning satanism and photographs of the victims as unduly prejudicial. Appellant cites several cases holding against

the admissibility of evidence as to religious belief.[1]  *See Commonwealth v. Greenwood*, 488 Pa. 618, 413 A.2d 655 (1980); *Commonwealth v. Mimms*, 477 Pa. 553, 385 A.2d 334 (1978).  In these cases the Pennsylvania Supreme Court found that the religious beliefs of the defendants were irrelevant to the charges against them.  *Greenwood* 488 Pa. at 622, 413 A.2d at 657 (defendant chased and shot man who broke into his house); *Mimms* 477 Pa. at 558, 385 A.2d at 336 (defendant's religious affiliation with Islam irrelevant to carrying concealed deadly weapon and carrying a firearm without a license).  The Court did not issue a blanket prohibition against evidence of a criminal defendant's beliefs, but only held that such evidence is inadmissible if it is irrelevant.  In *Mimms* the Court acknowledged that circumstances could exist "in which religious affiliation would be of relevance...."  *Mimms*, 477 Pa. at 558, 385 A.2d at 336. Such circumstances exist in the instant case.

■  It is clear that the evidence under consideration is relevant.  However, even relevant evidence "is inadmissible if the trial court, in its discretion, determines that its prejudicial impact outweighs its probative value."  *Commonwealth v. Ulatoski*, 472 Pa. 53, 63 n. 11, 371 A.2d 186, 191 n. 11.  Evidence of appellant's affiliation with satanism is prejudicial.  *See Iowa v. Tate*, 341 N.W.2d 63 (Iowa Ct.App.1983).  If such evidence were believed, we cannot imagine it endearing appellant to the average juror.  However, the jury was not compelled to accept this evidence. Testimony was also offered to show that appellant was not a satanist, that he was just play acting, and viewed his involvement in satanism as a joke.

It would be difficult to conceive of a trial at which the prosecution's evidence was not prejudicial to the defendant. *See Carter v. Hewitt*, 617 F.2d 961 (3d Cir.1980).  The difficulty arises when the evidence is so prejudicial that it sweeps the jury "beyond a rational consideration of guilt or

1.  We do not address the issue of whether satanism is a religion for First Amendment purposes.  *See Kennedy v. Meacham*, 540 F.2d 1057 (10th Cir.1976).

innocence of the crime on trial." *Ulatoski*, 472 Pa. at 63, 371 A.2d at 191 n. 11, *quoting* J. McCormick, *Evidence* Sec. 185, at 438–440 (2d Ed.1972). The evidence concerning satanism was not of this type and was properly admitted.

■ Appellant's beliefs were highly probative regarding the manner of the slayings. Expert testimony about satanism, specifically objected to by appellant, was accompanied by jury instructions containing the standard *caveat* to such testimony. The judge instructed the jury that they were free to accept or reject any expert opinion and emphasized that they were not bound to accept it. The expert testimony was carefully limited by the trial judge and admitted only after an *in camera* hearing.

■ The trial judge also carefully examined and ruled on the admissibility of all photographs of the victims. The photographs offered by appellee were culled by the court below to remove those that were cumulative or merely inflamatory. The record reveals that appellee was forced to justify each photograph finally admitted. The judge instructed the jury on photographs and inflamatory evidence, cautioning them not to "let such things stir up your emotions to the prejudice of the defendant. Your verdict must be based on a rational and fair consideration of all of the evidence in this case and not on passion or prejudice against the defendant, the Commonwealth or anyone else associated with this case." (N.T. Vol. XII, p. 222). Given the nature of the slayings, the photographs were important to illustrate the positions of the bodies and the patterns of the wounds inflicted. Their probative value outweighed their prejudicial impact. *See Commonwealth v. Green*, 477 Pa. 170, 383 A.2d 877 (1978). That impact was further diffused by the judge's instructions.

We find that the trial judge carefully and responsibly exercised the discretion entrusted to him in admitting evidence at appellant's trial.

Judgment of sentence affirmed.