512 A.2d 619

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brent EUBANKS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 25, 1985.

Decided July 9, 1986.

Steven J. Zwicky, Philadelphia, for appellant.

Robert B. Lawler, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Brent Eubanks was convicted of rape, aggravated assault, simple assault and unlawful restraint by a jury sitting in the Court of Common Pleas of Philadelphia. He was sentenced to seven to twenty years for rape and two and a half to five years for aggravated assault, the sentences to run concurrently. Sentence on the other charges was suspended. Judgment of sentence was affirmed by Superior Court per curiam, 329 Pa.Super. 558, 478 A.2d 56. This Court granted Eubanks' petition for allowance of appeal.*

Eubanks and Tracy Lomax, the complainant, gave conflicting versions of the events underlying the convictions. Lomax testified that on June 30, 1979, she returned to her apartment in the early hours of the morning after having spent the evening with her family. At approximately 5:00 a.m. she left her apartment and entered the common hallway of her apartment building to go to the bathroom. While she was in the hall, Eubanks, who lived one floor below Lomax, grabbed her and pulled her downstairs to his apartment. Although she fought and resisted, both in the hall and in the apartment, Eubanks overpowered her and finally raped her in his apartment. Nevertheless, she continued to scream and fight. Lomax was finally rescued when a police officer, who had been alerted by a neighbor that screams were coming from the building, managed to enter the building and burst into Eubanks' room.

Eubanks' testimony was that he encountered Lomax on the stairs of his apartment building during the early morning hours of June 30, 1986, and she invited him to her apartment to smoke marijuana cigarettes. After three cigarettes, they had consensual sex. When Eubanks prepared to leave, Lomax asked him to play a "game" with her. She explained that she was experiencing difficulty becoming sexually aroused because she had shot someone in the head. She then asked Eubanks to go to his apartment and wait for

---

* This case was reassigned to this writer on March 17, 1986.

her without putting any clothes on. Eubanks agreed to do this, thinking that she would come down and they would again have sex. Eubanks went to his apartment and Lomax arrived apparently fully clothed. After Eubanks closed the door, however, Lomax said, "I'm going to fix you," and threw a pair of panties on the floor which she had been holding in her hand. She then began to shout, "Rape. Help. Rape." Eubanks testified that he tried to quiet her by grabbing her and covering her mouth, but she continued to shout and fight him. He testified that the shouting and scuffling continued for ten minutes until the police arrived.

One Mr. Holmes testified that he heard the screams while he was visiting the house next door between 5:00 a.m. and 5:30 a.m. Someone was shouting, "Please don't kill me. Somebody help me." Shortly after Holmes left the neighbor's house at 5:30 a.m., he encountered a police car and told the officer about the screams. He accompanied the officer to the house and both could still hear the screams from outside. The officer testified that he entered the house, heard a woman screaming "Help me, please. Don't do it no more," and "Rape." In the hall outside Eubanks' apartment, he heard a male voice say, "Shut the f— up." He then burst in the door and discovered Lomax, whom he described as crying hysterically and bruised, with her face swollen. Eubanks was naked.

Eubanks asserts nine claims of error, but because of our disposition of this case, we address only two of these claims. First Eubanks asserts that the attorney for the Commonwealth engaged in a pattern of improper cross-examination which denied him a fair trial. During his testimony, Eubanks stated that he was planning to install drywall in the parish house of a church later in the day on June 30, 1979. Cross-examination included the following exchanges:

Q. Is it correct that you were working for the parish?

A. Yes.

Q. It's because you were a good Christian?

DEFENSE COUNSEL. Objection, Your Honor.

THE COURT. Sustained. It will be stricken from the record. The jury is instructed to ignore it.

\*  \*  \*  \*  \*  \*

Q. Does this church teach smoking marijuana?
DEFENSE COUNSEL. Objection.
THE COURT. Sustained.
Q. Premarital sex?
DEFENSE COUNSEL. Objection.
THE COURT. Sustained.

\*  \*  \*  \*  \*  \*

Q. Did you think smoking marijuana with Tracy Lomax at 5 in the morning was going to help you do a good job for the church, so you could get to the Marine Corps and serve your country in a week?
DEFENSE COUNSEL. Objection.
THE COURT. Sustained.

\*  \*  \*  \*  \*  \*

Q. Did you think that smoking marijuana at 5 o'clock in the morning was going to help you do a good job for the church, so you could do a good job for your country?
DEFENSE COUNSEL. Objection.
THE COURT. Sustained.

\*  \*  \*  \*  \*  \*

Q. And you go to church. Right?
THE COURT. Mr. Carpenter [The prosecutor].

As the Commonwealth attorney explained in his closing remarks, the purpose of this line of questioning was to indicate to the jury that Eubanks' claimed church service and Marine Corps affiliation was irrelevant to the issue of whether Eubanks committed a crime. In effect, these prosecutorial remarks constituted a sarcastic commentary on what the prosecutor perceived as Eubanks' attempt to clothe himself in innocence by asserting an affiliation with religious and military institutions.

The prosecutor's intentions notwithstanding, questions concerning Eubanks' religious beliefs may not be asked:

> No witness shall be questioned, in any judicial proceeding, concerning his religious belief; nor shall any evidence be heard upon the subject, for the purpose of affecting either his competency or credibility.

Act of July 9, 1976, P.L. 586, No. 142, 42 Pa. C.S.A. § 5902(b). This statute is firmly grounded in prohibitions against religious persecution found in the First Amendment to the United States Constitution and the Art. I § 3 of the Pennsylvania Constitution, which provides:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

Pennsylvania, more than any other sovereignty in history, traces its origins directly to the principle that the fundamental right of conscience is inviolate. *See The Papers of William Penn,* Vol. I (Dunn & Dunn, University of Pennsylvania Press), pp. 51–52, 90–93, 268, 280, 452, 511. In general, thus, our Commonwealth is neutral regarding religion. It neither encourages nor discourages religious belief. It neither favors nor disfavors religious activity. A citizen of this Commonwealth is free, of longstanding right, to practice a religion or not, as he sees fit, and whether he practices a religion is strictly and exclusively a private matter, not a matter for inquiry by the state. In the case at bar, the Commonwealth's cross-examination would not have suffered in the slightest had questions concerning Eubanks' religion not been asked.

In *Commonwealth v. Mimms,* 477 Pa. 553, 385 A.2d 334 (1978) the prosecutor attempted to impeach the credibility of a defense witness by asking him:

Q. Tell me, are you a good friend of Harry Mimms [the defendant]?

A. I am an acquaintance of him, I know him.

Q. You know him very well would you say?

A. Yes, sir.

Q. Are you both Muslims?

A. Sir?

MR. ABRAMSEN: Objection, sir, I move for withdrawal of a juror.

THE COURT. Overruled.

BY MR. KLEIN

Q. Are you both Muslims?

A. Yes, sir.

477 Pa. at 557, 385 A.2d at 335. The *Mimms* Court held that this line of questioning was improper, reversed the conviction and remanded for a new trial. The Court stated:

Although affiliation rather than belief was the thrust of the cross-examination above quoted, the one blends into the other. While circumstances can be imagined in which religious affiliation would be of relevance, it is clear from the present record that the religious affiliations of appellant and Morrison [the defense witness] were irrelevant to any issue at trial and that such inquiry had not in any way been evoked by the direct examination of Morrison.

477 Pa. at 558, 385 A.2d at 336. Neither in *Mimms* did we establish nor in the present case do we now establish a *per se* rule of reversible error. As we stated in *Mimms,* "Whether evidence, admitted in violation of a statute, actually deprives a defendant of his right to a fair trial must be viewed in the light of the attendant circumstances." 477 Pa. at 559, n. 8, 385 A.2d at 336, n. 8. *Cf. Commonwealth v. Greenwood,* 488 Pa. 618, 413 A.2d 655 (1980). In the case at bar a new trial is required because the questioning was irrelevant to any issue in the case and because the improper inquiry concerning Eubanks' religious beliefs continued even *after* the court sustained objections to this type of inquiry, gave an instruction, and ordered the improper questions stricken from the record.

In addition, because retrial will inevitably involve another issue which arose at the first trial, we also address Eu-

banks' claim that it was error to exclude evidence that Lomax had been convicted of third degree murder. *See Commonwealth v. Bogan*, 482 Pa. 151, 155, 393 A.2d 424, 426 (1978) (Issues likely to arise again on retrial addressed to promote the efficient administration of justice.) Eubanks sought to introduce evidence of the murder conviction in order to show that his version of events leading to his arrest is credible. Reduced to its elements, Eubanks is claiming that evidence of Lomax's murder conviction tends to corroborate his claim that Lomax told him she had killed someone by shooting them in the head.

The first question which arises as to Eubanks' claim is whether evidence of the conviction is relevant to the Eubanks' testimony that Lomax told him about the killing. Citing McCormick on *Evidence*, we have defined relevant evidence as follows:

> Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value. A leading commentator has suggested the following desideratum for relevancy: "[D]oes the evidence offered render the desired inference *more probable than it would be without the evidence?* ... Relevant evidence, then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible."

*Commonwealth v. McCusker*, 448 Pa. 382, 388, 292 A.2d 286, 289 (1972). (Emphasis in original.)

While the question is not without difficulty, since evidence that Lomax committed murder does not prove that Lomax told Eubanks she committed murder; nevertheless, in the context of a criminal defense, such evidence is admissible because it makes the defendant's version "more probable than it would be without" evidence of the conviction. Admittedly, admission of such evidence may, to some degree, smear the complaining witness in the eyes of the jury. But the complaining witness is not on trial; her liberty is not at stake. Considerations which require that prior convictions be excluded from evidence *against a de-*

*fendant,* except for convictions involving *crimen falsi* which may be admitted under well-established rules, are not applicable to the question of what prior convictions may be admitted into evidence *against a complaining witness.*

■ A similar question arose in *Commonwealth v. Greene,* 469 Pa. 399, 366 A.2d 234 (1976):

[A]ppellant complains that the testimony of a defense witness, Frank Mack, was improperly excluded. In his offer of proof, appellant contended that Mack would have corroborated his allegation that Johnson illegally sold drugs without prescriptions. Mack would have testified that he lived across the street from the pharmacy, had observed young males obtaining pills without prescriptions, and had consulted with authorities for the purpose of watching the store. Although it was the jury's prerogative to assess the credibility of the witness and the weight to be attributed to his testimony, the proffered testimony definitely was relevant to the proposition upon which the defense was building its case. The exclusion of this testimony, therefore, was improper. *Commonwealth v. Bailey,* 450 Pa. 201, 299 A.2d 298 (1973); *Commonwealth v. Collins,* 447 Pa. 300, 290 A.2d 121 (1972).

In *Bailey, supra,* the trial court excluded testimony of two witnesses who had borrowed money from a moneylender named Robinson. We held that this was reversible error because the testimony would have supported Bailey's version as to his own dealings with Robinson and his reason for going to his house. *Id.,* 450 Pa. at 206–07, 299 A.2d at 301. The *Bailey* court relied upon *Commonwealth v. Collins,* 447 Pa. 300, 290 A.2d 121 (1972), a similar case in which we held it error to refuse to admit testimony of others who had dealt with the deceased proprietor as a fence in order to substantiate Collins' version of his purpose for being in his shop. *Id.,* 447 Pa. at 302–03, 290 A.2d at 122. We find the instant case to be indistinguishable from the situations present in *Bailey* and *Collins.* An accused has a fundamental right to

present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule. *See Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038 [1049], 35 L.Ed.2d 297 (1973); *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). Once found to be admissible, the determination of the probative value of such evidence must be reserved to the factfinder. Here, Mack would have testified from personal observations that Johnson sold drugs to young males without prescriptions. *Such evidence would have supported Greene's version of his purpose for going to the pharmacy.* It is true that the probative value of Mack's testimony may have been determined by the jury to be minimal. Nevertheless, since the jury never had the opportunity to consider the testimony, its exclusion requires reversal.

469 Pa. at 404–6, 366 A.2d at 237. (Emphasis added.) Similarly, in the present case, evidence of Lomax's conviction supports Eubanks' claim that she told him she had killed someone, although it does not establish with certainty that such a conversation occurred. And the claim that Lomax told him that she had killed someone, in turn, supports Eubanks' version of events on June 30, 1979. As in *Greene,* the jury may determine that the probative value of this evidence is minimal; nevertheless, it is for the jury, not for this Court, to assess the importance of such evidence. We hold, therefore, that exclusion of evidence of Lomax's prior murder conviction was error, and if at retrial such evidence is offered under similar circumstances, it must be admitted into evidence.

Judgment of sentence is vacated and the case is remanded for a new trial.

McDERMOTT, J., files a concurring opinion.

LARSEN, J., files a dissenting opinion which PAPADAKOS, J., joins.

McDERMOTT, Justice, concurring.

The statute prohibiting the use of one's religion as a basis for impeachment is aimed not only at the protection of unimpaired religious freedom but excision of irrelevant and peripheral sources of prejudice in a trial. The statute prohibits the Commonwealth raising the issue, it does not however prohibit the Commonwealth from responding to the issue when raised by the defendant. If one proffers his religion or idealism as inconsistent with his alleged actions, and his actions prove him a whited sephulchre, the worse for him. One may not preach from the witness stand his devotion to principle or religion, then retreat to the sanctuary, his devotion untested. The prohibition of the statute is not a *per se* rule of exclusion under all circumstances. *See Commonwealth v. Mimms,* 477 Pa. 553, 385 A.2d 334 (1978). Here the appellant attempted to dress himself in a Marine Corps uniform while painting the parish house. His commitment to both were to my mind subject to scrutiny, and the doing so in the small context of this case is insufficient ground for a new trial.

I concur, however, with the majority's holding that denying the appellant the right to present complainant's murder conviction was error. I believe that murder, being the ultimate crime puts one's credibility to test upon that ground alone. To deny access to a witness' conviction for criminal homicide is to allow the perpetrator of the one irremediable crime to appear an ordinary man, to be judged in his credibility by ordinary standards, when such is not the case.

LARSEN, Justice, dissenting.

I dissent.

The majority reverses the order of the Superior Court and remands this case for a new trial on the grounds that the prosecutor improperly questioned appellant, Brent Eubanks, concerning his religious beliefs. This issue was *never* raised by appellant, either in the courts below or before this Court. The issue has therefore been waived and

may not serve as the basis for reversing the judgment of sentence. Pa.R.A.P. 302; *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Additionally, I disagree with the majority's advisory holding that evidence of the victim's prior murder conviction should have been admitted into evidence. The majority states that "such evidence is admissible because it makes the defendant's version more probable than it would be without evidence of the conviction." While evidence of the victim's conviction may make appellant's claim that the victim had told him that she had killed someone more probable, whether the victim told appellant that she had killed someone is *irrelevant* to the matter at issue: whether appellant committed rape, aggravated assault, simple assault and unlawful restraint.

The majority cites *Commonwealth v. Greene*, 469 Pa. 399, 366 A.2d 234 (1976), in support of its position on this issue. In *Greene*, the appellant was convicted of murder and robbery for killing one of the owners of a pharmacy and taking an attache case containing the store's daily receipts. At his trial, the appellant testified that he had gone to the pharmacy, not to commit a robbery, but to pick up some drugs which he had purchased illegally from the pharmacy earlier that day. The appellant then sought, but was not permitted, to introduce evidence which would have corroborated this story, namely, the testimony of a witness who would have testified that he had extensive knowledge concerning the pharmacy's practice of selling prescription drugs without prescriptions. This Court held that

[a]lthough it was the jury's prerogative to assess the credibility of the witness and the weight to be attributed to his testimony, the proffered testimony definitely was relevant to the proposition upon which the defense was building its case. The exclusion of this testimony, therefore, was improper.... An accused has a fundamental right to present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule. *See Chambers v. Mississippi*, 410 U.S.

284, 302, 93 S.Ct. 1038 [1049], 35 L.Ed.2d 297 (1973); *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).

469 Pa. at 404, 366 A.2d at 237.

*Greene* is distinguishable from the instant case, and despite its broad language, it does not require the admission of the challenged evidence in the instant case. In *Greene,* the challenged evidence was germane to the issue of the appellant's intent with regard to the crimes of murder and robbery, and it thus bore upon a matter at issue in the case. It was, therefore, relevant and admissible.[1]

Even if the victim's conviction in the instant case had some relevance to an issue in the case, that relevance is so slight as to be far outweighed by the danger of unfair prejudice.

> Relevant evidence is nonetheless excluded "if its probative value is substantially outweighed by the danger of unfair prejudice or confusion," *Carter v. Hewitt,* 617 F.2d 961 (3rd Cir.1980). "Prejudice," of course, does not mean "detrimental to a party's case" but rather "an undue tendency to suggest decision on an improper basis."

*Whistler Sportswear, Inc. v. Rullo,* 289 Pa.Super. 230, 433 A.2d 40, 47 (1981).

In the instant case, introduction of the victim's conviction for murder would definitely have had an "undue tendency to suggest decision on an improper basis." In all likelihood, the jury would have viewed the fact that the victim had

---

1. *See also Commonwealth v. Bailey,* 450 Pa. 201, 299 A.2d 298 (1973) (Court held it was error to exclude evidence that the victim's husband was a moneylender when appellant was charged with murder, appellant claimed he had gone to the victim's home to discuss an extension of time for repaying a loan, and the *challenged evidence had some bearing on appellant's intent at the time of the killing* of which he was convicted); *Commonwealth v. Collins,* 447 Pa. 300, 290 A.2d 121 (1972) (Court held it was error to exclude evidence that the victim's brother was a fence when appellant was charged with murder, appellant claimed that he had gone to the brother's watch repair shop to demand payment for some stolen jewelry he had previously left at the shop, appellant claimed the killing was committed in self-defense, and the *challenged evidence had some bearing on appellant's intent at the time of the killing* of which he was convicted).

been convicted of murder as bearing on the victim's character and, consequently, on her credibility. Thus, the jury would have been basing its decision on the victim's conviction for murder and not on the evidence presented by the Commonwealth. This clearly would have been improper. *See Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973) ("In order to prevent smearing rather than merely discrediting of the witness, [prior convictions used for] impeachment should be limited to crimes involving dishonesty or false statement.") and *Commonwealth v. Burton,* 491 Pa. 13, 417 A.2d 611 (1980) (Murder is not a crime involving dishonesty or false statement.). Therefore, evidence of the victim's conviction was inadmissible and was properly excluded by the trial court.

Accordingly, I would affirm the order of the Superior Court.

PAPADAKOS, J., joins in this dissenting opinion.