**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 9 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court dated August 9, |
| | : | 2019 at No. 472 MDA 2018 |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Luzerne County Court of |
| | : | Common Pleas, Criminal Division, |
| ERIC YALE, | : | dated November 17, 2017 at No. |
| | : | CP-40-CR-0001152-2017 |
| Appellant | : | |
| | : | ARGUED:  September 16, 2020 |

## OPINION

**JUSTICE DONOHUE**                                        **DECIDED:  April 29, 2021**

We granted discretionary review to clarify the appropriate standard for the admission of evidence of a third person's crimes, wrongs or other acts ("third person guilt") offered by a criminal defendant in an effort to raise a reasonable doubt that he was not the perpetrator of the crime charged.  The Superior Court applied the standard of admissibility typically associated with the Commonwealth's introduction of crimes, wrongs or other acts evidence against a criminal defendant pursuant to Pennsylvania Rule of Evidence ("Pa.R.E.") 404(b).[1]  We hold that evidence of a third person's guilt offered by

---

[1]  Pa.R.E. 404(b) provides, in relevant part, as follows:

**(b) Crimes, Wrongs or Other Acts.**

a defendant is admissible if it is relevant pursuant to Pa.R.E. 401[2] and not otherwise excludable pursuant to Pa.R.E. 403.[3] Thus, we vacate the Superior Court order and remand for proceedings consistent with this opinion.

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(3) Notice in a Criminal Case.* In a criminal case, the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(1–3).

[2] Pa.R.E. 401 provides:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Moreover, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

[3] "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

## Background

On March 21, 2017, United States Marshalls went to the home of appellant Eric Yale's mother where Yale resided to serve an arrest warrant on Larry Thompson. Officer Jeffrey Ference of the Wilkes-Barre Police Department assisted the Marshalls in serving the warrant. While searching the residence for Thompson, Officer Ference entered Yale's bedroom, where he found Yale, soda bottles containing methamphetamine, and materials commonly used to produce methamphetamine, including lighter fluid, Drano, lithium batteries, and soda bottles with tubes coming out of them. The chemicals are "mixed together in a plastic soda bottle" to produce the drug; this method of producing the drug is commonly referred to as the "one-pot" method. N.T., 9/26/2017, at 45-46. Officer Ference found Thompson hiding in the closet in Yale's bedroom. He took both Thompson and Yale into custody. After being read his *Miranda* rights, Yale admitted that the materials found in his bedroom were for the manufacture of methamphetamine. Because the chemicals present in the bedroom have a tendency to catch on fire or emit toxic gasses, Officer Ference contacted a special unit of the Pennsylvania State Police to dispose of the materials. The Commonwealth alleged that Yale and Thompson were liable under both principal and accomplice theories of liability.

Yale proceeded to a jury trial on September 26, 2017.[4] He attempted to prove that Thompson was solely responsible for the contraband found in Yale's bedroom. In support of this defense, Yale sought to introduce evidence of Thompson's previous arrests for methamphetamine-related offenses, including an October 12, 2016 arrest and a November 3, 2015 guilty plea. Both incidents involved Thompson's use of the "one-pot"

---

[4] Yale and Thompson were not tried together.

method to manufacture methamphetamine. The trial court prohibited Yale from introducing this third person guilt evidence, finding that it was irrelevant and would confuse the jury. N.T., 9/26/17, at 81–82. Relying on *Commonwealth v. Rini*, 427 A.2d 1385 (Pa. Super. 1981),[5] and later cases, including *Commonwealth v. Nocero*, 582 A.2d 376 (Pa. Super. 1990),[6] *appeal denied*, 593 A.2d 416 (Pa. 1991), which announced a

---

[5]  Norman Rini was charged with indecent exposure based on identifications provided by two high school girls who, while crossing a bridge on their way to school on September 20, 1977, were distracted by a remark by an individual on the railroad tracks below; when they looked down, they saw the man expose his genitals. *Rini*, 427 A.2d at 1386. At trial, Mr. Rini sought to introduce the testimony of another high school girl who saw a man — not Mr. Rini — exposing himself in exactly the same spot six days before the incident charged. The Superior Court opined:

> The testimony of the offered witness, by showing the other person committed the indecent exposure on September 20, would naturally tend to show that person committed the strikingly similar crime which appellant is accused of committing six days later.

*Id.* at 1388. Recognizing the relevance and probative value of third person guilt evidence, the Superior Court held that a defendant "may introduce evidence that someone else committed a crime which bears a **highly detailed similarity** to the crime with which the defendant is charged." *Id.* (emphasis supplied). Although the Superior Court acknowledged that "a veritable multitude" of appellate decisions have enunciated the principle of its holding in varying language, *id.*, its use of the phrase "highly detailed similarity" was a novel pronouncement.

[6]  The defendant in *Nocero* was convicted of vandalizing a water fountain in the student lounge of a Clarion University campus dormitory on October 7, 1988. *Nocero*, 582 A.2d at 377. He sought to introduce evidence of a similar act of vandalism that occurred in the same dormitory two days after the October 7th incident, which evidence the trial court rejected as irrelevant. On appeal, the Superior Court affirmed, observing that the defendant was not trying to establish that someone else, who admittedly committed a similar crime, also committed the crime for which the defendant was charged. *Id.* at 378. Rather, the defendant was trying to establish that, given the similar nature of the incidents and his non-participation in the subsequent incident, he could not have participated in the earlier incident for which he was charged. *Id.*

After reviewing decisions from this Court regarding the use of similar crimes to determine identity under Pa.R.E. 404(b)(2), the Superior Court found two factors "to be relevant in determining whether evidence of the other uncharged offense or bad act is admissible:

two-part admissibility test that includes a "signature crime" prong, and *Commonwealth v. Palagonia*, 868 A.2d 1212 (Pa. Super. 2005),[7] the trial court opined that Thompson's prior acts and the current case did not have "such detailed similarities or the same methodology" so as to exonerate Yale. Trial Court Opinion, 10/26/2018, at 8–9. Thus, it concluded, the evidence of third person guilt was not probative and would have confused the jury "by permitting the inference that being charged with a crime was itself suggestive of guilt" and by requiring "the holding of a trial within a trial." *Id.* at 9.

The jury found Yale guilty of possession with intent to manufacture or deliver, possession of red phosphorus with intent to manufacture; possession of a controlled substance; possession of drug paraphernalia; and risking catastrophe.[8] On November

---

(1) the time lapse between the commission of the two crimes; and (2) the resemblance between the methodologies of the two crimes." *Nocero*, 582 A.2d at 379. The *Nocero* court concluded that even if the evidence of the second water fountain incident satisfied its two-part test, the evidence was not admissible because it was irrelevant, i.e., the defendant's lack of participation in the second incident did not render it "more probable than not that the defendant was also absent when the first water fountain was disconnected." *Id.* at 380.

[7] *Palagonia* involved a defendant convicted of criminal trespass after he was seen on the balcony of an apartment in Whitehall Township. On appeal, the defendant challenged the trial court's exclusion of evidence about several burglaries that occurred in a neighboring housing complex on the same night that the defendant allegedly engaged in criminal trespass. *Palagonia*, 868 A.2d at 1215. The burglaries were similar to each other in that "the perpetrators used pry tools to open garage doors and then remove items from the garage." *Id.* at 1216. The defendant argued evidence of the burglaries was relevant to establish that someone else — not himself — was on the apartment balcony. The Superior Court concluded that the burglaries in the neighboring housing complex and the crime at issue "were not so distinctive or unusual as to constitute 'signature crimes.'" *Id.* Citing *Nocero*, the court explained that, even though the "time lapse between commission of the crimes" was brief, unlike the burglaries, the crime charged did not involve pry tools or forced entry. *Id.* at 1217.

[8] 35 P.S. §§ 780-113(a)(30), 780-113.1(a)(3), 780-113(a)(16), 780-113(a)(32), 18 Pa.C.S. § 3302(B).

17, 2017, the trial court sentenced Yale to incarceration for an aggregate term of sixty to one hundred and forty-four months. After the trial court denied Yale's post-sentence motions, he appealed to the Superior Court. In a non-precedential decision, the Superior Court affirmed. *Commonwealth v. Yale*, 472 MDA 2018, 2019 WL 3763966 (Pa. Super. Aug. 9, 2019). Relevant to this appeal, Yale argued that the trial court improperly precluded the evidence of Thompson's previous methamphetamine-related offenses.

In affirming the trial court's evidentiary ruling, the Superior Court recognized that a defendant has a fundamental constitutional right to present evidence in support of a full defense and that evidence is admissible provided it is relevant and not subject to exclusion by an evidentiary rule. *Yale*, 2019 WL 3763966, at *4. Initially citing *Rini*, 427 A.2d at 1388, the Superior Court opined that a defendant may introduce "evidence that someone else committed a crime which bears a **highly detailed similarity** to the crime with which the defendant is charged." *Yale*, 2019 WL 3763966, at *4 (emphasis in original). It also referred to *Nocero* and *Palagonia*, in which the Superior Court had adopted the standard more stringent than *Rini* that is akin to that which is applied when the Commonwealth offers Rule 404(b) evidence against a defendant. *Id.* (citing *Palagonia*, 868 A.2d 1216 ("Even if the proffered third-person crime and the charged crime occurred close in time to one another, the [proffered] evidence is not admissible unless the nature of the crimes is so distinctive or unusual as to be like a **signature** or the handiwork of the same individual.")).

Like the trial court, the Superior Court concluded that the evidence was inadmissible:

> Beyond Thompson's cases involving methamphetamine
> production, "[Yale] did not demonstrate how the present cases

against [Yale] and [Thompson] had such detailed similarities or the same methodology as the … cases against [Thompson] to show any common scheme, plan or design which would have exonerated [Yale.]" Pa.R.A.P. 1925(a) Opinion, 10/26/2018, at 9.[9] Consequently, [Yale] fails to demonstrate how Thompson's prior bad acts are so "strikingly similar" to his own charged crimes as to establish Thompson as "the person charged with the commission of the crime on trial." *Rini, supra*, at 1388; *see* N.T. Trial, 9/26/2017, at 45 (describing one-pot method of methamphetamine production as "[t]he way people make methamphetamine right now[.]"). Our review of the record leads us to conclude that the trial court did not abuse its discretion in finding that evidence of Thompson's prior methamphetamine-related activity was not so distinctive as to warrant admission. *Palagonia*, *supra* at 1216-17.

*Yale*, 2019 WL 3763966, at *5. Consequently, the Superior Court affirmed the judgment of sentence. Yale petitioned this Court for allowance of appeal, which we granted to decide the following question:

> (1) Whether the Superior Court misapplied controlling case law and misapprehended controlling facts in concluding that the trial court did not err as a matter of law or abuse its discretion in precluding the defense from presenting evidence that Larry Thompson, an individual found at the scene, had been previously arrested for similar offenses and possessed knowledge of how to manufacture methamphetamine, to demonstrate that he was the perpetrator of the present charges?

*Commonwealth v. Yale*, 226 A.3d 93 (Pa. 2020).

We review an evidentiary ruling for an abuse of discretion. *Commonwealth v. Travaglia*, 28 A.3d 868, 873 (Pa. 2011). This Court has explained that the "term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a

---

[9] The trial court and the Superior Court co-mingled evidence purportedly adduced to establish a common scheme, plan or design with evidence used to prove identity by virtue of a "signature" crime.

dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the [trial] judge." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted). "An appellate court will not find an abuse of discretion 'based on a mere error of judgment, but rather ... where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.'" *Id.* (quoting *Commonwealth v. Eichinger*, 915 A.2d 1122, 1140 (Pa. 2007) (citation omitted)).

## Arguments of the Parties

Yale contends that several factors underpin his right to present "substantial and highly reliable" evidence of Thompson's prior involvement in the manufacture of methamphetamine, including the lack of a search warrant for him, "no prior evidence linking him to drug manufacture, and no fingerprint or other forensic evidence linking [him] to the contraband." Yale's Brief at 17. According to Yale, the Superior Court's application of "the most stringent test possible for other acts evidence" — a "signature" threshold — where the defendant offers such evidence to negate his guilt was in contravention of Pennsylvania law, specifically, Pennsylvania Rules of Evidence 401 and 402, as well as state and federal cases recognizing a defendant's fundamental due process right to present a fair and complete defense in the form of relevant evidence, not otherwise excludable, that would tend to make the defense theory more probable than not. *See* Yale's Brief at 19–23 (citing cases). Yale suggests that the Superior Court erred because it altered the ordinary rules of evidence, which require that crimes, wrongs or other acts evidence be excluded only where it is irrelevant or its probative value is outweighed by

the disqualifying considerations in Pa.R.E. 403. *Id.* at 23 (citing *Wilson v. Firkus*, 457 F. Supp .2d 865 (N.D. Ill. 2006)).

Yale contrasts the Superior Court's use of the two-part *Nocero* test that excludes evidence of a third person's prior conduct unless that conduct equates with a "signature" crime or "common scheme" with the less restrictive approach the Superior Court had previously taken in *Commonwealth v. Thompson*, 779 A.2d 1195 (Pa. Super. 2001), a constructive possession case he considers on "all fours" with his situation, except that *Thompson* involved contraband found in a vehicle, not a residence. Yale's Brief at 26. The defendant in *Thompson* was charged with possessing cocaine that was found next to him on the back seat of co-defendant Bennett's vehicle. The defendant sought to introduce evidence of Bennett's prior arrests for drug trafficking. The trial court suppressed all but Bennett's most recent arrest, and a jury convicted the defendant. On appeal, the Superior Court determined that the issues were whether Bennett's prior arrests were relevant to the defendant's constructive possession of the cocaine and whether the probative value of those arrests outweighed any of the Rule 403 concerns. *Thompson*, 779 A.2d at 1202. The *Thompson* court observed that "the concern over the undue prejudice [Rule 404(b)] evidence might place upon" an accused did not exist because Bennett was not on trial; rather, "the evidence is crucial to [defendant's] defense." *Id.* at 1203. Reversing the trial court, the Superior Court ruled that Bennett's entire cocaine history was admissible to demonstrate that Bennett constructively and exclusively possessed the cocaine found next to the defendant on the back seat of Bennett's vehicle, not the defendant. *Id.* at 1202. According to the Superior Court, the third person guilt evidence was "relevant to prove that Bennett had the intent to exercise

control over the cocaine inside his vehicle, and such evidence [was] not unfairly prejudicial to the Commonwealth or otherwise likely to cause confusion." *Id.*

Yale asserts that, not only is the Superior Court's decision inconsistent with its approach in *Thompson*, it is also contrary to decisions from federal courts and sister states. Yale's Brief at 28–31 (citing cases). In particular, Yale highlights *United States v. Stevens*, 935 F.2d 1380 (3d Cir. 1991), in which the Third Circuit rejected the government's "attempt to impose hard and fast preconditions on the admission" of Fed.R.Evid. 404(b)[10] evidence proffered by a defendant to exculpate himself or raise a doubt as to the defendant's culpability. *Id.* at 1405. According to the *Stevens* court,

> the defendant, in order to introduce other crimes evidence, need not show that there has been more than one similar crime, that he has been misidentified as the assailant in a similar crime, or that the other crime was sufficiently similar to be called a "signature" crime. These criteria, although relevant to measuring the probative value of the defendant's proffer, should not be erected as absolute barriers to its admission. Rather, a defendant must demonstrate that the "reverse" 404(b) evidence"[11] has a tendency to negate his guilt, and that it passes the Rule 403 balancing test.

---

[10] The federal rule governing evidence of other crimes, wrongs or acts is similar to Pa.R.E. 404(b), providing, in relevant part, as follows:

> **(b) Other Crimes, Wrongs, or Acts.**
>
> **(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed.R.Evid. 404(b)(1), (2). Unlike its federal counterpart, Pa.R.E. 402(b)(2) specifically provides that in a criminal case, otherwise legitimate evidence is admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice."

[11] "Reverse 404(b) evidence" is a descriptive term used in some federal and other state court decisions and by commentators to describe evidence of crimes or acts of a third person offered by a defendant to raise a doubt as to the defendant's guilt. *See e.g.*,

*Id. See also United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984) (adopting the *Stevens* rationale and holding that "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword"). Yale posits that this lower standard of admissibility "comports precisely with the contours of Pennsylvania law, which is grounded in principles of basic relevance and inference." Yale's Brief at 29 (citing *Commonwealth v. Hawk*, 709 A.2d 373, 376 (Pa. 1998) ("Evidence that merely advances an inference of a material fact may be admissible, even where the inference to be drawn stems only from human experience.")).

Yale cites the following state decisions that were not based on conventional Rule 404(b) concepts and favor a lower standard for admissibility of third person guilt evidence:

> *See Norwood v. State*, 95 A.3d 588, 596-599 (Del. 2014) (quoting *Stevens*, *supra.*, and relying on *U.S. v. Aboumoussalem*, 726 F.2d 906, 911 (2d Cir. 1984) (adopting the lead provided by the Third Circuit Court of Appeals, in

---

*Stevens*, 935 F.2d at 1402; *State v. Williams,* 221 A.3d 1166, 1172 (N.J. 2019); *Allen v. State*, 103 A.3d 700, 712-13 (Md. 2014); 3 CLIFFORD S. FISHMAN & ANNE T. MCKENNA, JONES ON EVIDENCE § 17:78:10 (7th ed. 2017); Jessica Broderick, *Reverse 404(b) Evidence: Exploring Standards When Defendants Want to Introduce Other Bad Acts of Third Parties*, 79 U. COLO. L. REV. 587, 587 (2008)). Such evidence is thus apparently viewed as having the reverse purpose of evidence of bad acts and crimes of the defendant offered by the Commonwealth to inculpate the defendant. We have not adopted the descriptor "reverse 404(b) evidence" because it presupposes that the same considerations apply to its admissibility when offered by the defendant and its admissibility when offered by the Commonwealth, specifically the balancing of its prejudicial effect against its probative value. As discussed in greater detail later in this opinion, Pa.R.E. Rule 404(b)(2) is inapplicable to third person guilt evidence proffered by a defendant who has no burden of proof and since prejudice is simply not an issue in that situation. *See also Commonwealth v. Gill*, 206 A.3d 459, 469 (Pa. 2019) (Wecht, J., concurring) (evidence of another person's crimes and bad acts offered by a defendant "mislabeled" as reverse 404(b) evidence since the entire objective of Rule 404(b) is to ensure such evidence is offered for a permissible purpose and not to impugn defendant's character).

*Steven*s, the Supreme Court of Delaware held that "a lower standard of similarity should govern reverse 404(b)" evidence and should be admitted to suggest that another had committed the crime, so long as it was offered for a "proper purpose" and because there existed no risk of "unfair prejudice" under Rule 403 because it was the defendant seeking to admit the evidence.); *State v. Williams,* 221 A.3d 1166, 1172 (N.J. 2019) (though the Supreme Court of New Jersey declined to find the proffered evidence of the defendant to be relevant, which involved other crimes evidence, that Court stressed that the "reverse 404(b)" evidence should not have been reviewed under Rule 404(b) but should only have been evaluated under New Jersey's Rule 401 (relevance), explaining: "A defendant is permitted to use other-crime evidence defensively so long as the evidence 'tends, alone or together with other evidence, to negate his guilt' or support his innocence of the charge against him ... To determine whether a defendant may use other-crime evidence, courts must apply the 'simple' relevance standard of Rule 401."); *State v. Garfole*, 76 N.J. 445, 388 A.2d 587, 591 (1978) (same); *Sessoms v. State,* 357 Md. 274, 744 A.2d 9, 18 (2000) (following federal court jurisprudence, including *Stevens* and involving Rule 404(b), Court of Appeals of Maryland held that other crimes evidence of a third party, since it does not create a risk of prejudice to the defendant, is not governed by Maryland's Rule 404(b) and need only be relevant to the crime charged or even for the impeachment of a state's witness) and *Allen v. State,* 440 Md. 643, 103 A.3d 700, 712-713 (2014) ("Reverse other crimes evidence" is not subject to Rule 404(b), and need only be relevant under Rule 401 and pass the balancing test of Rule 403.). The Superior Court's "signature" standard is thus incompatible with national jurisprudence.

Yale Brief at 29–31. Because the Superior Court used a standard that is incompatible with Pennsylvania jurisprudence, as well as that enunciated by courts in other states and federal courts, Yale argues, application of that standard to exclude his third person guilt evidence was "an abuse of discretion." *Id.* at 31.

Moreover, even under a stricter standard, like the *Rini* "highly detailed similarity" or the two-part *Nocero* test, Yale asserts that a comparison of this case and Thompson's

drug history makes the third person guilt evidence admissible. Yale was not the target of the search warrant, there was no evidence that he was even suspected of or linked to methamphetamine possession or manufacturing, and he did not display consciousness of guilt during the search. Yale's Brief at 32. In contrast, Thompson was the target of the search warrant, had been arrested twice and pled guilty once to methamphetamine possession and manufacturing, and displayed consciousness of guilt by hiding in the closet during the search. *Id.* Additionally, both of Thompson's prior drug offenses involved a methamphetamine operation using the one-pot method and all the same types of contraband found in Yale's bedroom. *Id.* at 32–37. According to Yale, even the four-month and three-year lapses of time between Thompson's prior offenses and this case were "not so great as to justify exclusion" because in both of those incidents, Thompson had the knowledge and the wherewithal to manufacture methamphetamine using the one-pot method. *Id.* at 38. Thus, Yale asserts, the trial court should have admitted his evidence, and his witnesses should have been allowed to testify that Thompson's prior acts involved the same components and methodology as the crimes charged, making them relevant "particularly within the confines of [this] constructive possession case." *Id.* at 38 (citing *Thompson*, 779 A.2d 1195). In conclusion, Yale submits that the appropriate standard for the admissibility of third person guilt evidence is that it is relevant and not otherwise excludable. Yale requests a new trial because the lower courts did not apply this standard.

The Commonwealth responds that "there is no 'stricter' rule of admissibility at play… . There is one Rule governing the admissibility of 'other crimes' evidence. Rule 404(b)(2)." Commonwealth's Brief at 14. Because Rule 404(b)(2) speaks to the crimes,

wrongs and other acts of a "person," it provides a framework for admissibility of acts evidence "regardless of which party proffers the evidence." *Id.* According to the Commonwealth, such evidence is admissible if it is relevant to motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident, or a common plan, scheme or design, and if its probative value is not outweighed by its potential for unfair prejudice. "It's that simple." *Id.* at 15. The Commonwealth contends that this evidentiary rule is consistent with a defendant's constitutional — although not absolute — right to have a "meaningful opportunity to present a complete defense." *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). Third person guilt evidence "can be excluded if it is marginally relevant or poses a risk of harassment, prejudice or confusion of the issues." *Id.* at 16 (citing *Holmes*, 547 U.S. at 326–27). The Commonwealth champions the use of Rule 404(b) as the test for admissibility of a defendant's evidence because it allows a defendant to present a complete defense and it serves "the rational goal of keeping the trial focused on the central issues at hand[.]" Commonwealth's Brief at 17 (citing *Holmes*, 547 U.S. at 330).

Acknowledging that Yale has a fundamental right to present evidence and that evidence tending to show that someone else committed the crime is relevant, the Commonwealth examines whether some other established evidentiary rule warrants exclusion of Yale's proffered evidence. Commonwealth's Brief at 18. To do so, the Commonwealth starts from the premise that Yale is offering Rule 404(b) evidence to prove that Thompson "has a character trait and has acted in accordance with that character trait," which he can do only if the evidence is relevant to another purpose, "such as a common plan." Commonwealth's Brief at 19 (citing Pa.R.E. 404(b)(1), (2), and *Rini*,

427 A.2d 1385). The Commonwealth then relies on the two-part *Nocero* test as the proper standard for judging the admissibility of the proffered evidence. Although it concedes that Thompson's two prior incidents of methamphetamine possession and manufacture "are fairly close in time to the present case, no more than three years," it asserts that, because "the one pot method of cooking methamphetamine is not so distinctive as to be the signature of the same perpetrator," the trial court did not abuse its discretion by excluding the third person guilt evidence. *Id.* at 20. Even if the evidence were admissible under *Nocero*, the Commonwealth continues, the trial court could have excluded it because "it may have diverted the jury's attention away from [Yale's] guilt as an accomplice." *Id.* The Commonwealth concludes that the trial court did not abuse its discretion and the Superior Court did not err in affirming the trial court because the prior incidents were not sufficiently distinctive to warrant admission and exclusion did not violate Yale's right to present a defense. *Id.* at 23.

Yale responds that the Commonwealth's endorsement of the "signature" crimes test is incorrect on two fronts. The Commonwealth's first error, Yale contends, is its interpretation of Rule 404(b), which ignores the fact that "nothing in Pennsylvania law" restricts admissibility of third person guilt evidence to a signature-crime threshold. Reply Brief at 2 (citing *Commonwealth v. Gill*, 206 A.3d 459, 465 n.4 (Pa. 2019)). It also ignores that Pa.R.E. 404(b) does not apply "with equal stringency to both the defense and the prosecution" because the rule "imposes special burdens on the prosecution but not the defense in terms of notice; and the prejudice balance is different between the parties[.]" Reply Brief at 3 (citing Pa.R.E. 404(b)(3)). The second Commonwealth error, in Yale's opinion, is its equating a defendant's fundamental right to present a defense with a Rule

404(b) signature-crime analysis. Yale explains that the Commonwealth's "prosecution-focused signature" threshold for admission of third person guilt evidence is incompatible with the *Holmes* constitutional threshold, i.e., whether the evidence "tends clearly" to point to another's guilt. *Id.* Yale also repudiates the Commonwealth's claim that Thompson's other drug activity was not distinctive enough to be admissible by pointing out that "the details were much more than a drug production method"; Thompson was in Yale's house; Thompson was the only person named in the U.S. Marshall's arrest warrant; and Thompson was named in the affidavit of probable cause in this case. *Id.* at 4–5. Yale argues that the jury should have been able to consider the third person guilt evidence to determine if the contraband belonged to Yale or to "the person who was the target of the police search and who had engaged in substantially similar drug activity repeatedly[.]" *Id.* at 6.

## Analysis

The United States Supreme Court has long recognized that a defendant has the right to present evidence and that in defense, evidence of a third person's guilt is relevant. For example, in *Chambers v. Mississippi*, 410 U.S. 284 (1973), Chambers was charged with the shooting death of a policeman who, while attempting to execute a warrant at a local bar, was met with resistance from a hostile crowd that included Chambers. *Id.* at 285. At trial, Chambers attempted to introduce evidence that another man, McDonald, who was in the crowd, "had admitted responsibility for the murder on four separate occasions, once when he gave [a] sworn statement to [the defendant's] counsel and three other times prior to that occasion in private conversations with friends." *Id.* at 289. Although the trial court admitted McDonald's sworn statement, it denied admission of his

confession evidence as hearsay; the state Supreme Court affirmed that ruling.  On review, the high Court recognized, "Few rights are more fundamental than that of an accused to present witnesses in his own defense."  *Id.* at 302.  Observing that "Chambers' defense was far less persuasive than it might have been had … the … confessions been admitted," the high Court held that the exclusion of McDonald's out-of-court confessions to the crime charged on hearsay grounds was a deprivation of Chamber's "traditional and fundamental standards of due process."  *Id.* at 294, 302.

Similarly, in *Holmes v. South Carolina*, 547 U.S. 319 (2006), the high Court addressed the right of an accused to defend against accusations by offering evidence of a third person's guilt.  Holmes was sentenced to death for beating, raping, and robbing an eighty-six-year-old woman who died of complications stemming from her injuries. Upon post-conviction review, the defendant was granted a new trial.  Upon retrial, the defendant sought to exculpate himself by introducing evidence that another man was the attacker.  Citing *State v. Gregory*, 16 S.E.2d 532 (S.C. 1941), the trial court excluded the evidence, and the South Carolina Supreme Court affirmed, holding that the defendant could not "overcome the forensic evidence against him to raise a reasonable inference of his own innocence." *State v. Holmes*, 605 S.E.2d 19, 24 (S.C. 2004) (citing *Gregory* and *State v. Gay*, 541 S.E.2d 541 (S.C. 2001)).

Upon review, the United States Supreme Court first approved of the admissibility standard adopted in *Gregory*:

> [E]vidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as

> to the commission of the crime by another, is not admissible.
> ... But before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party.

*Gregory*, 16 S.E.2d at 534 (citations to secondary sources omitted).  The high Court then observed that, as it previously did in *Gay*, the South Carolina Supreme Court "radically changed and extended the rule" announced in *Gregory* by focusing, not on "the probative value or the potential  adverse effects" of the defendant's third person guilt evidence, but on the strength of the State's case:  "If the prosecution's case is strong enough, the evidence of third-person guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues."  *Holmes*, 547 U.S. at 329.  The *Holmes* Court concluded that the standard applied by the South Carolina Supreme Court did not serve the end that the *Gregory* rule was designed to promote — "to focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues."  *Id.* at 330.  According to the *Holmes* Court, the "true strength" of one party's proof cannot be assessed without considering "contrary evidence offered by the other side to rebut or cast doubt."  *Id.* at 331.[12]  Because the rule applied by the state court "did not heed this point," it did not serve any legitimate end, thereby violating the defendant's right to have "a meaningful opportunity to present a complete defense."  *Id.*

---

[12]    Highlighting the fallacy of the government's position, the *Holmes* Court asked rhetorically:  "If the defendant is able to proffer, at a pretrial hearing, evidence that, if believed, strongly supports a verdict of not guilty," would a rule that precluded the State's evidence of guilt be logical?  *Holmes*, 547 U.S. at 330.

(internal quotation marks and citations omitted). Thus, the Court vacated the judgment of sentence and remanded for further proceedings.

This Court has also historically recognized a defendant's right to present evidence that someone else committed the crime of which he is accused. Almost a century ago, we held that an accused "should be allowed to prove a fact which would logically produce a doubt of his guilt in the mind of the jury." *Commonwealth v. Loomis*, 113 A.2d 428, 431 (Pa. 1921); *see also Commonwealth v. Ward*, 605 A.2d 796, 797 (Pa. 1992) (reiterating defendant has fundamental right to present evidence, e.g., third person's motive, provided the evidence is relevant and not subject to exclusion under established evidentiary rule); *Commonwealth v. Boyle*, 368 A.2d 661 (Pa. 1977) (explaining that evidence of third person's motive need only support inference that accused did not commit the crime);[13] *Commonwealth v. Eubanks*, 512 A.2d 619 (Pa. 1986) (holding exclusion of victim's bad acts was prejudicial error because the evidence makes accused's version more probable than it would be without the evidence); *Commonwealth v. Marvin Collins*, 290 A.2d 121 (Pa. 1972) (same).

In rejecting Yale's evidence of a third person's crimes and bad acts to cast doubt on his own guilt, the lower courts applied the heightened similarity standard for admissibility associated with the Commonwealth's use of evidence of a defendant's

---

[13] The Commonwealth distinguishes *Boyle*, which involved evidence of a third person's motive to commit the crime. According to the Commonwealth, proof of motive does not require evidence of other similar or distinctive crimes. Commonwealth's Brief at 21. In contrast, Yale cites *Boyle* as focusing "broadly on the right to present a defense in any form," without distinguishing between purposes, e.g., to establish a third person's motive or to negate the defendant's guilt. Yale's Brief at 20; *see also* Reply Brief at 4 (quoting *Boyle*, 368 A.2d at 669 ("It is well-established that *proof of facts showing the commission of the crime by someone else is admissible*.") (emphasis in original)).

crimes, wrongs or other acts. Yale proposes a threshold for evidence of a third person's guilt based on the lenient standards defining relevant evidence. Our review of Pennsylvania Rule 404(b) and state and federal cases addressing this issue supports Yale's argument that our lower courts have been incorrectly applying Rule 404(b) standards to evidence of crimes or bad acts of a third person offered by a defendant as exculpatory evidence.

Pennsylvania's common law prohibited the admission of crimes, wrongs or other acts evidence to demonstrate a defendant's propensity to act in a certain manner: "It is not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely the defendant would commit another," thereby relieving the Commonwealth of its constitutional burden of proof beyond a reasonable doubt. *Shaffner v. Commonwealth*, 72 Pa. 60, 65 (1872). In its landmark decision, in connection with the admission of such evidence against a defendant as part of a scheme or plan, the *Shaffner* Court explained,

> [t]o make one criminal act evidence of another, [1] a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or [2] it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other.

*Id.* at 65. *Shaffner* provides substantial guidance in distinguishing certain bad acts from the "general rule that a distinct crime, unconnected with that laid in the indictment, cannot be given in evidence **against a prisoner**." *Id.* (emphasis supplied). At the heart of the common law prohibition on propensity evidence is the threat of prejudice to a defendant caused by replacing the presumption of innocence with a presumption of guilt based on

prior conduct. *See Commonwealth v. Fortune*, 346 A.2d 783, 786 (Pa. 1975) ("[T]he effect of such evidence is to create prejudice against the defendant in the jury's mind.").[14]

Rule 404(b) codifies Pennsylvania's common law prohibition on the use of propensity evidence. It also provides, as at common law, that in a criminal case bad acts evidence may be admissible, under special circumstances, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident but only if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2); *Commonwealth v. Billa*, 555 A.2d 835, 840 (Pa. 1989); *Commonwealth v. Morris*, 425 A.2d 715 (Pa. 1981). To safeguard the boundaries between Rule 404(b)'s prohibition and its exceptions, this Court has consistently required that evidence of a defendant's bad acts submit to two principles derived from *Shaffner* and embedded in our decisional law: Bad act evidence is admissible 1) if a logical connection exists between the bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime. *Commonwealth v. Hicks*,

---

[14] Justice Saylor critiques our "focus on the prejudicial impact on defendants as presenting a unilateral justification for the ban against propensity evidence." Dissenting Op. (Saylor, J.) at 2 n.1 (citing *United States v. McCourt*, 925 F.2d 1229, 1235–36 (9th Cir. 1991)). We acknowledge that the ban against propensity evidence has roots in additional concerns. *See McCourt*, 925 F.2d at 1235 n.9 (listing four other concerns noted in Weissenberger, *Federal Evidence* § 404.12, at 87–88 (1987)). Even if prejudice is not the unilateral justification for the ban against propensity evidence, it is the concern that distinguishes the proffer of propensity evidence against a defendant and the proffer of third person guilt evidence by a defendant.

In contrast to Justice Saylor's opinion that Rule 404(b) is not constitutionally infirm because it does not infringe on a weighty interest of the defendant and is not arbitrary or disproportionate to the purpose it was designed to serve, Dissenting Op. (Saylor, J.) at 2 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006)), we maintain that, when applied to a defendant's offer of third person guilt evidence, the heightened standard of Pa.R.E. 404(b)(2) infringes on a defendant's weighty interest of presenting a complete defense.

156 A.3d 1114, 1143 (Pa. 2017) (Donohue, J., dissenting). In short, absent "a larger field of operation, previously conceived and in part executed," *Commonwealth v. Chalfa*, 169 A. 564, 565 (Pa. 1933), or a signature-bearing crime, "mere similarities between the bad acts and the crime on trial are insufficient to establish grounds for admissibility." *Hicks*, 156 A.3d at 1145 (Donohue, J., dissenting). Moreover, because the impact of admitting bad acts evidence against a defendant is significant and may be highly prejudicial, if such a link exists, Rule 404(b) expressly provides that the evidence is admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Necessarily, exacting standards corral the Commonwealth's use of Rule 404(b) evidence to prevent unfair prejudice to a defendant whose liberty is at stake and to prevent the potential loss of the presumption of innocence. However, without a developed rationale, decisions by our courts have equated the Commonwealth's evidentiary standard with the standard of admissibility for evidence offered by the defendant of third person's bad acts to raise a doubt as to the defendant's guilt.[15]

Distinct from the standard employed when the Commonwealth offers evidence of a defendant's bad acts, this Court's early cases on the admissibility of evidence of third

---

[15] In this context, Yale cites to a constructive possession case. *Commonwealth v. Thompson*, 779 A.2d 1195 (Pa. Super. 2001); *see* Yale's Brief at 26; *supra* pp. 8–9. The defendant was charged with possessing cocaine found in the back seat of the vehicle in which he was a passenger. He proffered evidence that the owner of vehicle had prior arrests and a conviction for drug trafficking to demonstrate that the owner constructively possessed the cocaine found in the back seat. Observing that the potential for prejudice associated with Rule 404(b) evidence does not exist where the third person is not on trial, the Superior Court observed that evidence of the vehicle owner's entire cocaine history was "relevant to prove that [he] had the intent to exercise control over the cocaine inside his vehicle, and such evidence [was] not unfairly prejudicial to the Commonwealth or otherwise likely to cause confusion." *Thompson*, 779 A.2d at 1202.

person guilt were based upon an examination of the relevance of the evidence: whether the evidence supports an inference that the defendant did not commit the crime and someone else did. *See Loomis*, 113 A. at 431 (evidence of a fact that would logically produce a doubt of guilt is relevant); *Boyle*, 368 A.2d at 669 (evidence of another person's motive is relevant); *Eubanks*, 512 A.2d at 623 (evidence that makes defendant's version more probable than not is relevant); *Collins*, 290 A.2d at 122 (evidence tending to support defendant's version is relevant).

We continued to embrace that analytical framework, including in *Commonwealth v. McGowan*, 635 A.2d 113 (Pa. 1993). That case involved a gunpoint robbery of a pharmacy. The perpetrator demanded Dilaudid, and then fled. McGowan was arrested and charged with the crime. He sought to introduce evidence that he had been misidentified as the perpetrator in a string of prior robberies in order to establish that someone else committed the instant crime. The trial court precluded the evidence as irrelevant to the instant charge. The Superior Court affirmed. This Court reversed, holding that the trial court erroneously excluded the proffered evidence as irrelevant and the Superior Court erred in concluding that, although the misidentification evidence was relevant, counsel failed to establish the requisite similarities between the robberies. *Id.* at 115–16. The *McGowan* Court recognized the well-established principle that "evidence that a defendant has committed a crime other than the one for which he or she stands accused is admissible where the crimes possess substantial similarities such that proof of one tends to establish logically the identity of the accused as the perpetrator of the other." *Id.* at 115. By analogy to the converse situation, the Court reasoned, "[E]vidence that a defendant has previously been misidentified as the perpetrator of one or more

crimes bearing substantial similarities to the crime for which the defendant now stands accused is also relevant for the same reason and should likewise be admissible." *Id.* We then cited, with approval, the Superior Court's holding in *Rini* "that the defense may introduce evidence that someone else committed a crime which bears a highly detailed similarity to the crime with which the defendant is charged." *Id.* at 115 (quoting *Rini*, 427 A.2d at 1388). Thus, although embracing the general test for relevance, the *McGowan* Court placed parameters on the consideration of the evidence by approving the highly detailed similarity standard devised by the Superior Court.

In *Commonwealth v. Weiss*, 81 A.3d 767 (Pa. 2013), the defendant was charged with murder. At the time of Weiss' trial, his ex-wife's brother, Larry Priest, had a conviction for assaulting a man with a claw hammer. On PCRA review, Weiss argued that his counsel was ineffective for failing to move Priest's conviction into evidence to support Weiss' testimony that he had been assaulted by Priest. We relied on *McGowan* for the general rule articulated in Pa.R.E. 401 that "evidence which tends to show that the crime for which an accused stands trial was committed by someone else is relevant and admissible" and for the *Rini* rule that a defendant is entitled to introduce evidence that someone else committed a crime bearing a highly detailed similarity to the crime with which a defendant is charged. *Id.* at 806–07 (quoting *McGowan*, 635 A.2d at 115).

In *Commonwealth v. Patterson*, 91 A.3d 55 (Pa. 2014), the defendant was charged as a conspirator in the fatal shooting of a police informant by confessed shooter Sean Durrant. Durrant claimed that he shot the victim at the behest of Patterson who wanted the victim killed because he was a "snitch." *Id.* at 61. Patterson was imprisoned at the time of the murder and sought to negate his guilt by, inter alia, offering evidence of two

other people with a motive to commit the murder. *Id.* at 71. Citing *McGowan* and *Weiss*, this Court again acknowledged that "the defense may introduce evidence that someone else committed a crime which bears a highly detailed similarity to the crime with which a defendant is charged." *Id.* at 72.

Finally, in *Commonwealth v. Gill*, 206 A.3d 459 (Pa. 2019), we reversed the Superior Court which abused its discretion in upending an evidentiary ruling of the trial court that allowed the defendant to offer evidence of a 2016 burglary similar to the 2013 burglary charged against the defendant. In short, the trial court found the burglaries to be significantly similar and close enough in time to be admissible, and the Superior Court reversed finding that the similarities were insufficient to conclude that the nature of the crimes were so distinctive so as to create a signature of the same individual. Acknowledging that admissibility of the defendant's evidence presented "a close call," because the three-year gap diminished the probative value of evidence regarding the 2016 burglary, we deferred to the trial court's exercise of discretion in "finding that the 2013 and 2016 burglaries were sufficiently similar insomuch as 'the victim was the same, the amount of money was the same, there was no sign of forced entry, and the lockbox was accessed with a key.'" *Id.* at 468 (citing Trial Court Opinion, 10/19/2016, at 1). Implicitly rejecting application of the signature crime analysis, we concluded that the trial court did not abuse its discretion in allowing evidence of the 2016 burglary because the substantial similarities shared by the two burglaries "weigh[ed] in favor [of] allowing a fact-finder to consider the evidence in determining [Gill's] guilt." *Id.*[16]

---

[16] Justice Wecht filed a concurring opinion in which this author joined. *Gill*, 206 A.3d at 468. Justice Wecht argued that the signature crime analysis employed by the Superior

Although we approved the *Rini* standard in *McGowan*, *Weiss*, and *Patterson*,[17] we did so without discussion of the relationship between third person guilt evidence offered by a defendant to 404(b) evidence offered by the Commonwealth and without addressing *Nocero* or *Palagonia*. This absence of concrete guidance has led to inconsistent application of an evidentiary standard culminating in the Superior Court's decisions in *Nocero* and *Palagonia* which essentially equate the admissibility of a defendant's offer of third person guilt evidence with the admissibility of evidence offered by the Commonwealth against a defendant under our Rule 404(b) case law.

As discussed, Pa.R.E. 404(b) embodies our pre-codification jurisprudence acknowledging the inadmissibility of propensity evidence. The Commonwealth argues that Yale's attempt to introduce evidence relating to Thompson implicates the same evidentiary standards that apply to the prosecution.

> To be clear, when a defendant is attempting to present evidence of someone else's wrongful criminal conduct, its admissibility is governed by Pa.R.E. 404(b). This is so because the defendant, Appellant in this case, it [sic] **trying to prove** that a person has a certain character trait and has acted in accordance with that character trait. Pa.R.E.

Court should be explicitly rejected because it is inapt in cases involving evidence of crimes perpetrated by another proffered by a defendant as exculpatory evidence.

[17] The application of the heightened similarity standard was not determinative in any of these cases. In *McGowan*, we reversed and remanded, not because the lower courts applied the wrong standard, but because "defense counsel was not given ample opportunity to set forth the similarities" between the crime charged and the proffered evidence. *McGowan*, 635 A.2d at 116. In *Weiss*, we held that counsel was not ineffective because Weiss only sought to introduce third person guilt evidence to corroborate his own testimony that Priest assault him, not to demonstrate that Priest was responsible for the victim's murder. *Weiss*, 81 A.3d at 807. In *Patterson*, the defendant identified two different alternative perpetrators. He only offered third person guilt evidence as to one of them and he waived the issue of whether that evidence was admissible. *Patterson*, 91 A.3d at 72.

> 404(b)(1). Such evidence is inadmissible unless offered for another purpose, such as a common plan. Pa.R.E. 404(b)(2).

Commonwealth's Brief at 18-19 (emphasis added).[18]

We disagree, as this argument overlooks the constitutional significance of the Commonwealth's duty to prove Yale guilty beyond a reasonable doubt versus the absence of any such duty on the defendant's part. "It is well-established that the defendant has no duty to present evidence and may instead rely on the presumption of innocence and the Commonwealth's burden of proof." *Commonwealth v. Smith*, 17 A.3d 873, 908 (Pa. 2011) (citations omitted). With that principle in mind, and in conjunction with Yale's constitutional right to present a defense, Yale does not seek to use this evidence to **prove** anything, as required by the Rule. "This evidence may be admissible for another purpose, such as **proving** motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2) (emphasis added). He simply wishes to present this evidence to undercut the Commonwealth's efforts to establish guilt beyond a reasonable doubt. To be sure, proving to the jury's satisfaction that Thompson is alone guilty of the crime would naturally result in Yale's acquittal. But Yale is not required to prove that Thompson or anyone else committed the crime to be acquitted. He needs only to establish that the Commonwealth failed to meet its burden. "It is . . . beyond cavil that it is the Commonwealth's burden to prove guilt, rather than the defendant's duty to establish innocence." *Commonwealth v.*

---

[18] In his dissent, Justice Dougherty aligns with the Commonwealth on this point, claiming that we have created a "different standard" by concluding that third person guilt evidence falls outside the parameters of Pa.R.E. 404(b)(2). Dissenting Op. (Dougherty, J.) at 4. As discussed *infra*, the distinct liberty interests of a criminal defendant versus those of a non-party third person mandate different standards for the admission of prior bad acts evidence.

*Kennedy*, 453 A.2d 927, 929 n.2 (Pa. 1982). Indeed, taking the Commonwealth's argument regarding "proof" at face value demonstrates its flaw. No one would suggest that if Yale were acquitted based upon the strength of the evidence at issue that Thompson has been implicitly convicted as the only other possible perpetrator. His presumption of innocence would remain, with the Commonwealth required to prove the elements of the crime beyond a reasonable doubt. The Commonwealth's argument that "proof" of Thompson's guilt is germane invites courts to assume that one or both of Thompson or Yale will be found guilty.[19]

In contrast, the question of actual proof is obviously the critical consideration when the Commonwealth seeks to use 404(b) evidence. Rule 404(b)(2) permits "evidence of prior crimes, wrongs and acts, so long as the evidence is used for purposes other than to prove character or a propensity to act in accordance with traits of character." *Commonwealth v. Johnson*, 160 A.3d 127, 144 (Pa. 2017). That type of evidence, like all circumstantial evidence, is sufficient to establish guilt beyond a reasonable doubt. *Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007). Pa.R.E. 404(b)(2) generally recognizes the legitimate use of crimes, wrongs and acts as one type of circumstantial evidence that the prosecution may use to establish guilt beyond a reasonable doubt.

---

[19] Like the foreign and federal courts cited by Justice Saylor, we agree "that other-bad-acts evidence is generally inadmissible for purposes of demonstrating only a predisposition to commit crimes or other bad acts, even where a defendant seeks to do so in an attempt to deflect blame to a third party." Dissenting Op. (Saylor, J.) at 2–3. In fact, we opine that other-bad-acts evidence is never admissible for the purpose of demonstrating the propensity of a defendant or a third person. Even so, whereas determining the admissibility of other-bad-acts evidence under Rule 404(b) is necessary to prevent prejudice to a defendant, Pa.R.E. 401–403 adequately address the admissibility of such evidence when proffered by a defendant.

Acknowledging the probative value of such evidence, Pa.R.E. 404(b)(2), unlike its federal counterpart, includes an articulated limitation before the evidence is considered to be admissible: "In a criminal case, this evidence is admissible only if the probative value of this evidence outweighs its potential for undue prejudice." While the federal rule presumes admissibility where the evidence is relevant for a permitted purpose,[20] in a criminal case, the Pennsylvania Rule does not. Jones on Evidence § 17:6, 39 (7th ed.).

The inclusion of the "potential for undue prejudice" language within Rule 404(b)(2) should not be mistaken for a suggestion that undue prejudice to the Commonwealth's ability to secure a conviction is a relevant factor in determining the admissibility of this evidence. Putting aside the fact that Yale does not seek to prove anything, permitting a defendant to present evidence that tends to negate the Commonwealth's ability to prove the case beyond a reasonable doubt is a prejudice demanded by the Due Process Clause. "It is the continuing presumption of innocence that is the basis for the requirement that the state has a never-shifting burden to prove guilt of each essential element of the charge beyond a reasonable doubt." *Commonwealth v. Cosnek*, 836 A.2d 871, 874 (Pa. 2003) (citation omitted). "I view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." *In re Winship*, 397 U.S. 358, 372 (1970) (Harlan, J., concurring); *see also McKithen v. Brown*, 481 F.3d 89, 92 n.3 (2d Cir. 2007) ("[B]etter that ten guilty persons escape, than that one innocent suffer.") (quoting William Blackstone, 4 Commentaries). Thus, Pa.R.E. 404(b)(2) simply makes clear that in a criminal trial, the potential for unfair prejudice to a defendant is an

---

[20] *See* supra note 10.

overarching consideration before crimes, wrongs or acts may be deemed admissible. This construct codifies Pennsylvania law, *see* e.g., *Morris*, 425 A.2d 715, and reflects the constitutional considerations unique to such evidence when advanced against a defendant.

Further corroboration of this point is reflected in the comments to Pa.R.E. 404(b), which indicate that our case law permits the trial court to consider, as a component of admissibility, whether and how much potential for prejudice can be reduced by cautionary instruction. Pa.R.E. 404(b)(2), cmt. (citing *Commonwealth v. LaCava,* 666 A.2d 221 (Pa. 1995)). When the evidence is admitted, "the party against whom it is offered is entitled, upon request, to a limiting instruction." *Id.* (citing *Commonwealth v. Hutchinson*, 811 A.2d 556 (Pa. 2002)). Assuming that Yale was permitted to present the challenged evidence under the proper evidentiary test established today, the Commonwealth could not constitutionally request a limiting instruction informing the jury that it may balance the potential prejudice of the Thompson evidence against its duty to establish Yale's guilt of all elements of the crime beyond a reasonable doubt.

Further, given the prejudicial nature of bad acts evidence, Pa.R.E. 404(b)(3) requires the prosecutor to provide reasonable notice in advance of trial of the general nature of any such evidence the prosecutor intends to introduce. Pa.R.E. 404(b)(3) does not pre-condition its disclosure on a request by the defendant. Again, these are considerations unique to the admission of such evidence against a defendant. The construct of Rule 404(b)(2) and (3) makes clear that these rules are intended to direct the manner in which evidence of crimes, wrongs and acts may be used by the Commonwealth against a defendant because of the prejudicial nature of such evidence.

Prejudice is not a factor when a defendant seeks to admit third person guilt evidence. The third person implicated by the defendant's evidence is not prejudiced because that person is not facing the possibility of a criminal conviction, especially a conviction based on a "jury's willingness to assume his present guilt from his prior misdeed." *Aboumoussallem*, 726 F.2d at 911.[21] If the defendant is successful in raising a reasonable doubt as to guilt, the defendant will be exonerated but the third person offered as the perpetrator will not suffer a consequence. *See Eubanks*, 512 A.2d at 623 (when a defendant presents evidence of a third person's guilt, there is no possibility of prejudice to the defendant or the third person).

Some commentators have raised concerns that identifying a known third person still results in prejudice because such evidence is raised in a public forum, with the third person lacking representation. Jessica Broderick, *Reverse 404(B) Evidence: Exploring Standards When Defendants Want to Introduce Other Bad Acts of Third Parties*, 79 U. Colo. L. Rev. 587 (2008). This speculative concern pales in comparison when considered in light of the need for a defendant to present a complete defense, which is a constitutionally protected right.[22] *See California v. Trombetta*, 467 U.S. 479, 485 (1984)

---

[21] The Second Circuit Court has acknowledged the risk of prejudice if the similar acts evidence concerned prior acts of a co-defendant in a joint trial. *Aboumoussallem*, 726 F.2d at 911 n.4.

[22] Although Justice Saylor acknowledges a defendant's right to present a complete defense, he opines that it "is subject to reasonable restriction and therefore, its breadth is subject to established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence." Dissenting Op. (Saylor, J.) at 1-2 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973)). Because Pa.R.E. 401–403 are the most fundamental of established rules or procedures designed to assure both fairness and reliability in the ascertainment of guilt or innocence, they are sufficient for determining the admissibility of third person guilt evidence.

(discussing requirement that prosecutors turn over exculpatory evidence to defendants and explaining this was necessary for "protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system"). Indeed, the Supreme Court has held that the Constitution forbids the "exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes*, 547 U.S. at 320. Thus, while there may be some background concern for the interest of a third person not involved in the litigation, the interest of the defendant whose liberty is at stake and who has a constitutional right to a defense must rise above the theoretical interests of a nonparty.

Shoehorning third person guilt evidence into the traditional Rule 404(b) case law framework impedes a defendant's opportunity to offer evidence that is relevant to his defense. In all cases, a defendant must be able to present a defense, including his version of the facts, if only to measure the true strength of the prosecution's proffered evidence of guilt. *See Washington v. Texas*, 388 U.S. 14, 19 (1967) (recognizing defendant's right to present his version of the facts to jury so it may decide where truth lies); *Holmes*, 547 U.S. at 330 ("[T]he true strength of the prosecution's proof cannot be assessed without considering challenges to the reliability of the prosecution's evidence."). The need to hear a defendant's version can be compelling where, as here, the prosecution relies on the presence of contraband in the defendant's room to establish constructive possession. Another person, Thompson, was likewise found in proximity to the contraband (i.e., hiding in the bedroom closet) and likewise charged with constructive possession. Yale's only viable defense may be the introduction of evidence to raise an

inference that Thompson was in sole possession of the contraband.[23]  Applying Rule 404(b)(2) case law standards, like requiring a true signature crime, to third person guilt evidence demands too much of a defendant who is attempting to establish that the Commonwealth has failed to meet its burden to prove all elements of the crime beyond a reasonable doubt.

Given the construct of Pa.R.E. 404(b) and the absence of prejudice to an alternative perpetrator, evidence of that person's crimes, wrongs or other acts lies outside the contours of Rule 404(b) when introduced by a criminal defendant.  *Accord Gill*, 206 A.3d at 472–73 (Wecht, J., concurring) (questioning whether third person guilt evidence was even subject to principles derived from conventional Rule 404(b) case law).  Rather,

---

[23]  In their dissents, Justices Saylor and Dougherty suggest that the Commonwealth's theories of liability, namely as a principal and an accomplice, in the methamphetamine operation renders evidence of Thompson's prior offenses irrelevant to Yale's potential defenses.  Dissenting Op. (Saylor, J.) at 3; Dissenting Op. (Dougherty, J.) at 2–3.  Respectfully, this logic is flawed.

Justice Dougherty notes that the Commonwealth "charged" Yale as an accomplice and a principal.  However, it is more accurate to say that these terms merely reflect theories of culpability.  *See*, *e.g.*, *Commonwealth v. Roebuck*, 32 A.3d 613, 614 (Pa. 2011) ("[T]he Commonwealth relied upon accomplice theory, which is codified in Section 306 of the Crimes Code along with other complicity-based accountability principles.").  In any event, the ultimate determination of culpability is a matter of fact for the jury to decide.  The Commonwealth cannot eliminate Yale's ability to introduce this evidence by citing its theories of why Yale may be guilty any more than it can insist a trial is unnecessary because it believes that Yale is guilty.  The extent to which these issues may cause confusion is, at most, a factor for the court to consider in assessing whether this evidence is admissible.  It is for the trial court to assess Yale's proffered evidence under the appropriate evidentiary standard.

Yale and Thompson were not tried together, making Thompson a non-party third person for purposes of admitting evidence of his prior offenses and, as such, immune to the liberty and prejudice concerns faced by Yale.

determining the admissibility of third person guilt evidence requires nothing more than the traditional inquiries prompted by our rules of evidence.

"The threshold inquiry with admission of evidence is whether the evidence is relevant." *Commonwealth v. Ronald Collins*, 888 A.2d 564, 577 (Pa. 2005). Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Pa.R.E. 401(a), (b). "All relevant evidence is admissible, except as otherwise provided by law." *Id.* at 402. Evidence that tends to support the accused's version of events is relevant and admissible. *Eubanks*, 512 A.2d at 263–64. If believed by the jury, such evidence might raise a reasonable doubt as to the defendant's guilt. *Ward*, 605 A.2d at 797.

In the case of third person guilt evidence, the relevant inquiries into admissibility are: Does the third person guilt evidence have a tendency to make the existence of any fact that is of consequence to the determination of the issue, e.g., the defendant's culpability, more probable or less probable than it would be without the evidence. Pa.R.E. 401. If so, is the probative value of the third person guilt evidence outweighed by any danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.[24]

---

[24] Justice Saylor embraces the structure created by Rule 404(b) case law and expresses concern that propensity evidence can be "distracting, time-consuming, and likely to influence a fact finder beyond its legitimate probative value." Dissenting Op. (Saylor, J.) at 2 (quoting *State v. Donald*, 316 P.3d 1081, 1089 (Wash. Ct. App. 2013)). In the context of otherwise relevant third party guilt evidence, Pa.R.E. 403 allows the trial court to address the possibility that such evidence may be distracting and likely to influence a fact finder beyond its legitimate probative value.

The Third Circuit's decision in *Stevens*, 935 F.2d 1380, and the Second Circuit's decision in *Aboumoussallem*, 726 F.2d 906, provide persuasive authority for the result we reach.[25] In *Stevens,* the Third Circuit held that third person guilt evidence should not be governed by conventional Rule 404(b) standards:

> When a defendant proffers "other crimes" evidence under Rule 404(b), there is no possibility of prejudice to the defendant; therefore, the other crime need not be a "signature" crime. Instead, it only need be sufficiently similar to the crime at bar so that it is relevant under [Rule] 401 and 402, and that its probative value is not substantially outweighed by [Rule] 403 considerations.

*Stevens*, 935 F.2d at 1384. Similarly, in *Aboumoussallem*, the Second Circuit stated:

> [W]e believe the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword. The prosecution, in the Anglo-American tradition, may not ordinarily offer evidence of a defendant's prior wrongdoing for the purpose of persuading the jury that the defendant has a propensity for crime and is therefore likely to have committed the offense for which he stands trial... . [T]he evidence "is objectionable not because it has no appreciable probative value but because it has too much." Presumably, the "too much" argument means that a guilty person, and, of far more serious concern, an innocent person, may be convicted primarily because of the jury's willingness to assume his present guilt from his prior misdeed... . However, risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense.

*Aboumoussallem*, 726 F.2d at 911 (quoting 1A Wigmore, EVIDENCE § 58.2 (4th ed. 1983)).

---

[25] The Fifth and Tenth Circuits have taken the same position. *Holt v. United States*, 342 F.2d 163 (5th Cir. 1965); *United States v. Montelongo*, 420 F.3d 1169, 1174-75 (10th Cir. 2005).

Evidence is to be liberally admitted at trial. *Mitchell v. Shikora*, 209 A.3d 307, 319 (Pa. 2019). Third person guilt evidence is governed by Pa.R.E. 401–403. The prejudice-deterring Rule 404(b)(2) standards cannot be applied symmetrically to evidence that does not create prejudice or diminish the presumption of innocence.[26] Requiring a defendant who proffers third person guilt evidence to meet the heightened similarity threshold required of the Commonwealth ignores the integral prejudice consideration for 404(b)(2) evidence and the otherwise lenient bent of our evidentiary rules; equalizes the otherwise disparate positions of the parties; and negatively impacts the defendant's constitutional

---

[26] The Commonwealth posits that Rule 404(b) applies symmetrically to itself and a defendant without any analysis of the disparity of the parties' interests; if and how the admission of third person guilt evidence would cause unfair prejudice to the Commonwealth; or the various standards of admissibility employed by the Pennsylvania courts.

The Commonwealth points to Rule 404 (b)(1)'s prohibition of the use of evidence of a crime, wrong or other act to prove a **person's** character in order to show that on a particular occasion, the person acted in accordance with the character. The Commonwealth asserts that the use of the word "person" in Rule 404(b)(1) requires the remainder of Rule 404(b) to be applied to any person, not just the Commonwealth's use of evidence against a defendant.

We reject the Commonwealth's interpretation, which the dissenting justices support. Dissenting Op. (Saylor, J.) at 3; Dissenting Op. (Dougherty, J.) at 2–3. As demonstrated, Rule 404(b)(2) has a different application in a criminal case where prejudice is an inherent factor. Likewise, Rule 404(b)(3) only applies to evidence being offered by the Commonwealth. We find no incongruity in viewing "person" to mean a criminal defendant in the context of 404(b)(2). The general rule enunciated in Pa.R.E. 404(b)(1) encapsulates a basic relevancy precept as it pertains to character evidence. Rule 404(b)(2) and (3) codify exceptions when the Commonwealth offers bad acts evidence against a defendant.

Rule 404(a)(1) uses the same terminology in prohibiting evidence of a **person's** character or character trait to prove that the person acted in accordance with the character or trait. Rule 404(a)(2)-(4) then lists specific exceptions for a defendant, a victim, a witness and in certain civil case context. Reading 404(b)(2) to create an exception for one category of trial participants, i.e., the defendant, is consistent with the structure of the rule in its entirety.

right to present a complete defense. Thus, in order to secure both the probative and exculpatory value of third person guilt evidence and the constitutionally protected right of a defendant to offer a complete defense, we hold that Rules 401 through 403 provide the correct approach for assessing third person guilt evidence. Third person guilt evidence is admissible if it is relevant, not otherwise excludable, and surmounts the disqualifying considerations of Pa.R.E. 403.

As to the terminology that has been used to describe the relevancy of third person guilt evidence, in *McGowan*, we approved the language of *Rini*: the third person's crimes or bad acts must bear a highly detailed similarity to the crime with which the defendant is charged. As discussed, this was a slippery slope. That standard morphed in the intermediate appellate court into requiring evidence of a signature crime or other similarly stringent Rule 404(b)(2) evidentiary standards articulated in our case law, which we now reject.

We, likewise, distance ourselves from the use of the shorthand "highly detailed similarity" to describe the evidence of bad acts of a third person required to make it relevant. If a shorthand is required, we opt for the Third Circuit's use of the phrase "sufficiently similar," *Stevens*, 935 F.2d at 1384, which more accurately captures the thrust of Rule 401. Ultimately, the question is whether the evidence supports an inference that the defendant did not commit the crime and someone else did. The more detailed the similarity, the more likely a finding of relevance. But a lesser level of detail combined with other circumstances attendant to the crime charged and the third person's relationship to it are also pertinent considerations. So too are the temporal factors relative to the third person's bad acts and the crime charged. Trial courts regularly exercise

discretion in determining the relevancy of evidence. We discern no need to tie the hands of trial judges by appending an adjective to the degree of similarity required for making a relevancy determination.

### The Proffered Third Person Guilt Evidence

Yale's defense was that he was not involved with the methamphetamine operation discovered during the search of his residence on March 21, 2017, under a warrant to arrest Thompson. In support, Yale established that he was not the target of a search warrant; he had no prior drug crime history; there was no evidence linking him to drug manufacture; there was no fingerprint or forensic evidence linking him to the contraband found in his bedroom; and he did not display consciousness of guilt during the search. N.T., 9/26/2017, at 25–27, 32, 69, 87–88. Additionally, Yale sought to cast doubt on his connection to the contraband and methamphetamine found in his bedroom by identifying Thompson as the sole possessor of the contraband. The record established that Thompson was the only person named in the U.S. Marshall's warrant; he displayed consciousness of guilt by hiding in the closet during the search; and the contraband found in the bedroom was consistent with the production of methamphetamine using the one-pot method. *Id.* at 25, 27, 32, 46–67, 89. When Yale attempted to introduce evidence of Thompson's knowledge of the manufacturing process based on two prior arrests for manufacturing methamphetamine using the one-pot method, namely a 2016 open case and a 2013 case that resulted in a guilty plea, the trial court disallowed the evidence. *Id.* at 77–82, Defense Exhibits 1–4.

Yale reasons that given the lack of direct evidence linking him to drug manufacture or the contraband, his lack of prior involvement in such activity and the execution of the

warrant for Thompson's arrest at Yale's residence being the only link to the contraband, Thompson's history of two substantially similar drug offenses made it more probable than not that Yale was not involved as a principal or an accomplice in the methamphetamine operation discovered in his home.

In this case, the central issue is Yale's complicity in a methamphetamine operation. Given the appropriate standard for the admission of third person guilt evidence, the question at hand is two-fold:  Whether evidence of Thompson's conviction of a methamphetamine crime using the one pot method of manufacture and an open case involving the same circumstances are relevant when viewed as part of the entire defense strategy and whether the probative value of the evidence was outweighed by any Rule 403 consideration.  Would the evidence cast a shadow of doubt on Yale's complicity? *See Holmes*, 547 U.S. at 331 (explaining that the strength of one party's evidence cannot be assessed without consideration of the other party's evidence); *Commonwealth v. Petrakovich*, 329 A.2d 844, 848 (Pa. 1974) (explaining that jury is responsible for choosing between competing versions of facts); *Loomis*, 113 A. at 431 ("[T]hough possibly not throwing much light upon the guilt or innocence of the defendant, yet, on a trial for his life, he was entitled to the benefit of any reasonable doubt which [the evidence] might raise in the mind of the jury.").

Pertinent to the relevancy analysis is consideration of the crime charged which was based on principal and accomplice liability.  Moreover, in weighing the probative value of the evidence under Rule 403 the trial court must weigh the danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.

Since the trial court based its evidentiary ruling on the improper relevancy standard set forth in *Nocero* and *Palagonia*, the case must be remanded for consideration of the evidence in a manner consistent with this opinion.[27]

**Conclusion**

The lower courts abused their discretion by applying an erroneous standard of admissibility. When evidence of third person guilt is offered by a defendant, the standard is not the same as the one applied when the Commonwealth seeks to establish a defendant's guilt. We therefore reverse the order of the Superior Court affirming the trial court's exclusion of Yale's third person guilt evidence with instructions to remand to the trial court for a ruling on the admissibility of the third person guilt evidence pursuant to Pa.R.E. 401–403. If the trial court determines that Yale's third person guilt evidence is admissible, Yale would be entitled to a new trial.

Chief Justice Baer and Justices Todd and Wecht join the opinion.

Justice Saylor files a dissenting opinion in which Justice Mundy joins.

Justice Dougherty files a dissenting opinion.

---

[27] Justice Saylor suggests that the proper course in light of our holding is to remand to the Superior Court for a harmless error assessment as "more conventional and appropriate" and because the Commonwealth raised harmless error in that court (but the court did not discuss that alternative argument). Dissenting Op. (Saylor, J.) at 6. As the admission of evidence lies within the discretion of the trial court and Pa.R.E. 401–403 govern the admissibility of third person guilt evidence, it behooves us to remand to the trial court for determination of the admissibility of the proffered evidence pursuant to those rules, not Rule 404(b)(2). Depending on the trial court's ruling, the Commonwealth may again be in a position to raise harmless error.